## REED VS. THE STATE.

It is sufficient, in an indictment for murder, to charge that the deceased was a "Wyandott Indian, whose name is to the jurors unknown," without averring that the deceased was a human being.

Where an indictment for murder describes the deceased as a Wyandott Indian, the description is material, and the race of the deceased must be proved as alleged.

Such description may be proved by reputation; and although it would not be sufficient if the witness stated that "he did not know except from what he had heard;" that the deceased was a Wyandott Indian, yet the jury would be warranted in finding the fact, where a witness stated "that he heard from those, with the Indian that was killed, that he was a Wyandott Indian," when it was in proof that there was a band of Indians encamped together, of whom the deceased was one.

Where, upon the trial of an indictment for murder, the bill of exceptions purports to set out all the evidence, and fails to show that it was in proof that the act was committed in the county where the indictment was found, the judgment will be reversed. (*Sullivant vs. State,* 3 *Eng.* 400; *McElroy vs. State, ib.* 451; *Holeman vs. State,* 13 *Ark.* 110.)

*Appeal from the Circuit Court of Desha County.*

Hon. THEODORIC F. SORRELLS, Circuit Judge.

YELL, for the appellant.  There is no evidence in this case but the admissions of the party : but it is a well settled principle that the admissions of a party, when given in evidence, must be taken together, as well what makes in his favor as what makes against him.  *Stover vs. Gowen,* 6 *Shep.* 174; *Howard vs. Newson,* 5 *Miss.* 523; *Reese vs. Hardy,* 7 *Miss.* 343; 1 *Phillips Ev.* 397; 4 *Blackstone* 357; *Roscoe's Crim. Ev.* 38 *to* 44.

The allegation in the indictment is, that the defendant killed a Wyandott Indian.  The proof as to this, is that one of the wit-

nesses heard an Indian say that the deceased was a Wyandott. This, I presume, is no proof at all. *Phill. on Ev.* 197; *Roscoe's Crim. Ev.* 22.

The allegation was, that the name of the deceased was, to the grand jurors, unknown. Carter says he was one of the grand jurors that found the indictment; the grand jury tried to find out the name of the deceased, but he don't think they knew it. *Wharton's Am. Crim. Law* 218, 104 *to* 108, 110. This allegation must be proven, for it is material.

In the case of *Rex vs.* ———, *R. R.* 489, that an indictment against a defendant, describing him as a *person*, to the jurors unknown, without some other designation as to whom the grand jury meant, would be an insufficient indictment. See *note R. American Crim. Law* 108.

In this case the indictment does not allege that he is a person. A variance in the name or identity of the party laid as injured, will entitle the party to an acquittal. 2 *Hale's Pleas of the Crown*.

Indian is the name of a river in Asia. It applies as well to the persons who inhabit the Indies, east or west, as it does to aborigines of America; but, with the adjective Wyandott attached to it, it has no fixed signification to it known to the English language, and to decide that a term or phrase the signification of which is unknown to the English language, means a human being in an indictment, where the greatest particularity is required, would be to set a precedent in criminal proceedings that might hereafter lead to bad consequences.

Mr. Attorney General JORDAN, for appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Reed was indicted in the Desha Circuit Court, for the murder of "a certain Wyandott Indian, whose name is [was] unknown to the grand jury." He was tried upon the plea of not guilty, convicted of manslaughter, and sentenced to the penitentiary for

four years. Motion in arrest of judgment and for a new trial overruled, and appeal to this court.

The motion in arrest of judgment, was upon the grounds that the allegation in the indictment, that the name of the Indian was unknown to the grand jury, was insufficient; and that there was no allegation in the indictment, that any human being was killed by the defendant, and that the court could not judicially know that the words "Wyandott Indian," meant a human being.

If the name of the party deceased be known, it should be stated. 1 *Chitty's Crim. L.* 212, 213 ; *Cameron vs. The State,* 13 *Ark. R.* 712. But if the name of the person killed cannot be ascertained, an indictment for the murder "of a certain person, to the jurors unknown," will be valid. 1 *Chitty's Crim. L.* 212 ; 3 *i b.* 733 ; 2 *Hale* 181.

In this case, the indictment alleges the killing "of a certain *Wyandott Indian,* whose name is unknown to the grand jury, in the peace of the State," &c. The words *Wyandott Indian* are surely as certain, and indeed more descriptive of the deceased, than the general term "*person,*" used in the precedents.

It is not alleged in any indictment, in terms, that the party slain is a *human being.* This is to be inferred from the character of the accusation and the descriptive language employed in the tenor of the indictment.

It would hardly be going too far to say, that the court judicially knows that a *Wyandott Indian* is a *human being,* and especially when it is alleged that he was in the peace of the State, and was *murdered.* 1 *Greenleaf's Ev.,* sec. 4, 5, 6. If there could be any serious doubt of this, the verdict, upon the plea of not guilty, would cure the defect, as the court below would hardly have received from the jury a verdict of *manslaughter,* unless it had been proven upon the trial that the deceased was a *human being.* The learned counsel could hardly have been serious in urging that the word *Indian* might have referred to a *river,* which he says bears that name. It would be a glaring want of judicial knowledge, in any court, to suppose that a man was indicted for

the murder of a river, or that a jury would return a verdict for *manslaughter* in such case.   An indictment for selling liquor to an Indian of the Miami tribe, whose name was to the jurors unknown, was held good.   *State vs. Jackson*, 4 *Blackf.* 49.

The motion for a new trial is based upon the grounds, that the verdict was contrary to law and evidence, and that the court admitted incompetent evidence upon the trial.

It is urged by the prisoner's counsel, that the proof was not sufficient to sustain the allegation in the indictment; that the name of the deceased was unknown to the grand jury.   The only evidence on this point, was as follows: Carter being introduced and sworn, on the part of the State, was asked by the prosecuting attorney, if the grand jury knew what was the name of the deceased Indian?   He answered, "I don't think they knew it : they tried to find out what his name was; I was a member of the grand jury."

The allegation in the indictment, that the name of the deceased was unknown to the grand jury, was a material one, to be proven to the satisfaction of the jury as any other fact, and they were judges of the sufficiency of the evidence.   As to what degree of certainty would be legally sufficient to establish the fact, was well enough settled in the case of *Cameron vs. The State.*

Upon the sufficiency of the evidence upon this point, as well as that connecting the prisoner with the killing of the deceased, which consisted entirely of the statements of the prisoner to the witnesses, we deem it improper to express any opinion, as the case must be sent back for a new trial.

The attorney for the State asked the witness, Grace, if the deceased was of the Wyandott tribe of Indians.   He answered that he did not know, except from what he had heard.   The prisoner's counsel objecting to such evidence, the court overruled the objection, deciding that as to whether the Indian was a Wyandott or not, could be proven by common reputation, and the prisoner excepted.

The unlawful killing of any human being is a crime.   Had

the indictment charged the killing of a *certain person* whose name was to the grand jurors unknown, we know of no rule of law requiring any proof of the race of the deceased. But here the indictment charges the murder of a certain *Wyandott Indian*, whose name was unknown to the grand jury. The allegation that he was a Wyandott Indian, was matter of description and identity of the person slain.

This mode of identification was adopted by the draftsman of the indictment, and we think the State thereby took upon herself the burthen of making some proof of such descriptive matter.

The object of the allegations in an indictment, descriptive of the deceased, is to inform the accused of the particular crime with which he is charged, that he may prepare to meet it, and to put upon record the necessary identification of the offence to protect him against a second indictment for the same crime. The name of the deceased is the legal mode of description; and must be stated in all cases where it can be ascertained by the grand jury. But where the name cannot be ascertained, or where an infant is murdered before it has received a name, the criminal is not, on that account, to go unpunished, and the law permits of other modes of description. 1 *Chitty's Cr. L.* 112 *to* 217. If there be a material variance between the name of the deceased, alleged in the indictment, and that proven upon the trial, it is fatal. *Roscoe Cr. Ev.* 694 *to* 697. ' Or if the State omits to prove the name as alleged, the evidence is deficient. *Gabe alias Santa Anna vs. The State*, 1 *Eng. R.* 540. So we think upon principle, where the indictment undertakes to identify the deceased by his race, as in this case, the State should make some proof of the descriptive matter. The addition or occupation of the deceased, if alleged, need not be proven, (3 *Chitty's Crim. L.* 733) because these have reference to his political or social condition merely, and are not personal marks of identity, as his race is. And though, as above remarked, the race of the deceased need not be alleged, yet if alleged, it should be proven, as the State takes upon herself the proof of it as descriptive of the offence. The distinc-

tion between the races of men, is strongly marked, in their personal appearance, language, habits, &c., and there is but little difficulty in determining, by some competent evidence, the peculiar race of an individual when alleged. And if a man is charged with the murder of an Indian, or a negro, the record would afford him no protection against a subsequent indictment for the same offence, alleging the deceased to have been a white person. In other words, the record would not bear upon its face, any evidence that the two accusations were for the same offence. No more than if a man were charged in one indictment with killing *John Doe*, and in the other with the murder of *Richard Roe*.

The court below was right in deciding that it was competent to prove by common reputation, that the deceased was a *Wyandott Indian*. The people of this country being generally Anglo-Saxon, a person coming into any community, of a different race, bears upon him such peculiar marks of his nationality, as to enable the community very soon to form an opinion in reference to it, sufficiently certain for all the purposes of legal identity. See 1 *Greenl. Ev.* sec. 103, 104, 105. It stands upon the same footing with the proof of pedigree.

The witness, Grace, was asked if the deceased was of the Wyandott tribe of Indians, and he answered that he did not know except from what he had heard; and it does not appear from the bill of exceptions that he answered further on the subject. He did not state whether he had heard that he was or was not, or from whom he had heard it. Whether from one individual, or from a sufficient number of the community to constitute it common reputation. His evidence, therefore, amounted to nothing.

The witness, Sexton, stated "that he heard from those with the Indian that was killed, that he was a Wyandott Indian," and to this evidence the defendant objected, and excepted to its admission by the court. This statement, if taken by itself, is not satisfactory, but when taken in connexion with the testimony of the other witnesses who testified on the trial, it was doubtless competent evidence. It appears that a party of Indians, passing

through the country, it may be inferred, encamped near Sexton's residence, and remained there for some weeks. The prisoner was prevailed upon by some white men, to go with them to the camp one night, to play the fiddle for them, that they might have a frolic with the Indian women. The Indians, during the night, were offended at the conduct of the white men, and drove them off, but insisted that the prisoner, who it seems was a negro, should remain, and he did so. During the night he got into a difficulty with one of the Indian men, in whose tent he slept, and killed him.

Understanding Sexton to have referred to the declarations of the party of Indians, so encamped in the neighborhood, the deceased being with them, and constituting one of their number, we think that their declarations, as to the tribe to which they belonged, or as to the tribe to which the deceased belonged, made under ordinary circumstances, in response to inquiries on the subject, such as would be commonly made of a party of Indians passing through the country, were competent. It would be of as high a grade of evidence as general reputation in the community where the Indians had encamped, that they were of the Wyandott tribe, because such reputation would ordinarily be derived from the declarations of the Indians themselves, in response to inquiries on that subject.

These remarks are made in reference to the competency of the testimony. The jury were the judges of its sufficiency, upon this point, as upon others.

The bill of exceptions purports to contain all the evidence that was offered or introduced upon the trial by either party, and it does not appear that any proof was made that the offence was committed in *Desha* county. This was a material allegation in the indictment, and required to be proven by the State. *Sullivant vs. The State*, 3 *Eng. R.* 400 ; *McCoy vs. State, ib.* 451 ; *Holman vs. The State*, 13 *Ark. Rep.* 110.

For the total want of evidence upon this point, the judgment of the court below is reversed, and the cause remanded for a new trial.