[Crim. No. 865. In Bank.—November 13, 1902.]

THE PEOPLE, Respondent, v. LEE LOOK, Appellant.

CRIMINAL LAW—MURDER—INSUFFICIENT INFORMATION.—An information merely charging that the defendant "unlawfully and with malice aforethought killed Lee Wing," without using the word "murder," or designating the thing killed as "a human being," is insufficient to sustain a conviction for murder.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. W. G. Lorigan, Judge.

---

[1] 87 Am. St. Rep. 110.

The facts are stated in the opinion of the court.

Louis O'Neal, and Owen D. Richardson, for Appellant.

Tirey L. Ford, Attorney-General, U. S. Webb, Attorney-General, C. N. Post, Assistant Attorney-General, and James H. Campbell, District Attorney, for Respondent.

McFARLAND, J.—A certain document in the form of an information was presented to the superior court and filed as a record thereof; and upon such information the defendant, after trial, was found by a jury "guilty of murder in the first degree, as charged in the information." Judgment thereon was rendered that he suffer the penalty of death, and he appeals from the judgment and from an order denying his motion for a new trial.

Appellant demurred to the information, and contends that, for reasons hereinafter noticed, it does not state facts sufficient to constitute the crime of murder. The entire information is as follows: "Lee Look is accused by the district attorney of the county of Santa Clara, state of California, by this information, of a felony committed as follows: The said defendant, on the 14th day of March, A. D. 1901, at the county and state aforesaid, unlawfully and with malice aforethought killed Lee Wing, contrary to the form, force, and effect of the statute in such cases made and provided, and against the peace and dignity of the people of the state of California." Murder under our law is defined as follows: "Murder is the unlawful killing of a human being, with malice aforethought." (Pen. Code, sec. 187.) It will be noticed that in this information the thing killed, Lee Wing, is not averred to have been a human being; that the crime of which he is sought to be charged is not stated to be "murder"; that there is no averment that he did "kill and murder" Lee Wing; that the word "murder" nowhere appears in the document, nor does the latter contain any other language which necessarily implied that the appellant killed a human being. We think therefore that, for this reason, the information is radically defective, and cannot support the verdict and judgment. This court has, no doubt, been exceedingly liberal in condoning loose pleadings; but to hold

that a man's life can be judicially taken on such an information as the one here in question would be to sacrifice to liberality all the established rules of pleading.

We do not mean to hold that an indictment for murder cannot be sufficient without an express averment that the thing killed was a human being—although there seems to be no good reason for leaving out that part of the statutory definition. There may be other language used which necessarily implies that the killing was of a human being, and in such case to designate the deceased by an appellation which could reasonably be considered as the name of a person would be sufficient, without the further express statement that the deceased was a human being. For instance, where, as is usual, the defendant is charged with the crime of "murder," or where, as is usual, it is averred that the defendant "did kill and murder," it may be reasonably inferred that the killing was of a human being, because to constitute murder there must be the killing of such a being. But there is no such averment here, nor its equivalent. The averment that the killing was unlawful and malicious would apply to the crime of malicious mischief committed by maliciously killing a horse, a dog, or a bird.

Counsel for respondent seem to assert quite confidently that indictments and informations like the one in this case have heretofore been sustained by this court, and strongly invoke the rule of *stare decisis;* but the cases cited do not support the position. The main cases relied on are *People* v. *Soto,* 63 Cal. 165, and—as approving it—*People* v. *Tomlinson,* 66 Cal. 345, and *People* v. *Hyndman,* 99 Cal. 3. In the Soto case the only points decided were that it is sufficient to charge an offense in the language of the statute defining it, and that an indictment for murder generally includes murder of both the first and second degree. In the opinion in that case the court say: "The point chiefly argued for the defendant is, that, under the information against him, he could not be legally convicted of murder of the first degree. The information is in the language of the statute defining murder, which is: 'Murder is the unlawful killing of a human being, with malice aforethought.' (Pen. Code, sec. 187.) Murder, thus defined, includes murder in the first degree and murder in the second degree. It has many times been de-

cided by this court that it is sufficient to charge the offense committed in the language of the statute defining it.'' In the case at bar the information was *not* ''in the language of the statute defining murder''; and in the Soto case there was no decision of the point here involved, and ''the crime of murder'' was expressly charged in the information. *People* v. *Tomlinson* was not a case of murder; it was a case of embezzlement, and the Soto case was cited merely to the point that an information is sufficient if it ''is in the language of the statute.'' In *People* v. *Hyndman* the Soto case is cited only to the points that murder ''includes both degrees,'' and that ''it is sufficient to charge the offense committed in the language of the statute defining it.'' Moreover, it was alleged in the information in that case that the defendant ''did kill and murder one William Searle.'' The only other California cases cited by respondents are *People* v. *Alviso,* 55 Cal. 230; *People* v. *McNulty,* 93 Cal. 427, and *People* v. *Freeland,* 6 Cal. 96. In the Alviso case the indictment, which was held sufficient, charged that the defendant unlawfully, etc., ''did kill and murder one John Ruhland.'' In the McNulty case the information charged that the defendant did ''kill and murder one James Collins''; and in answer to the contention that as the deceased was not designated as a human being, and James Collins might mean a horse as well as a person, the court said: ''It is manifest that the defendant could not have been otherwise than informed by the language used that he was accused of the murder of a human being, when he was charged with having murdered one James Collins.'' In the Freeland case the defendant was ''indicted for the crime of murder in shooting one 'Greek George' ''; and the point made was that '' 'Greek George' is not a common name of any person, and it is not averred that the real name of the deceased is unknown to the grand jury''; and it was in view of these facts that the court said that ''it was not necessary to allege that the deceased was a sentient being,'' and that ''for aught we know 'Greek George' may be the name of a man with as much propriety as any other name or appellation used to denote persons.'' Of course, a charge of the murder of ''Greek George'' necessarily included the proposition that he was a human being, for the killing of any other kind of

creature would not be murder. Indeed, the only question in
the case was whether "Greek George" was so unusual and im-
perfect as the name of a human being as to require a state-
ment in the indictment that the name of the deceased was to
the jury unknown.

Respondents have cited a number of cases from other juris-
dictions. We have examined those from which quotations
are made, and which are chiefly relied on, and we find that
nearly all of them are merely to the point that there need not
be an express statement that the deceased was a human being
where that fact was necessarily to be inferred from other aver-
ments in the indictment. One of these cases cited is *Merrick*
v. *State,* 63 Ind. 337, where it is stated in the opinion of the
court that "the indictment contains two counts, each count
charging murder in the first degree." In *State* v. *Stanley,* 33
Iowa, 526, the defendant is charged with murder committed
by, among other things, "lying in wait with the specific intent
to kill and murder the said William Patterson." In *Reed*
v. *State,* 16 Ark. 499, it is stated that the defendant was in-
dicted "for the murder of a certain Wyandotte Indian, whose
named was unknown to the grand jury." In *Perryman* v.
*State,* 36 Tex. 321, the defendant was indicted "for the mur-
der of William H. McMillan." In *Timmerman* v. *Territory,*
3 Wash. Ter. 444, the indictment accused the defendant "of
the crime of murder in the first degree, committed as follows."
The nearest approach to the case at bar among the cases cited
is *State* v. *Day,* 4 Wash. 104; but that case is based on *Leon-
ard* v. *Territory,* 2 Wash. Ter. 381; *Timmerman* v. *Territory,*
3 Wash. Ter. 444, and *Freidrich* v. *Territory,* 2 Wash. Ter.
358; and in the Leonard case the indictment had the words
"did kill and murder," and in the Timmerman and Freid-
rich cases the defendant was expressly charged with "the
crime of murder in the first degree." Moreover the defini-
tion of murder considered in *State* v. *Day* is as follows:
"Every person who shall purposely . . . *kill another* shall
be deemed guilty of murder in the first degree." Counsel
for respondents also cite *State* v. *Smith,* 38 La. Ann. 301; and
in that case the rule is stated correctly, and carries it as far
as it can be properly followed. The court there say: "It was
not necessary to have specified in the indictment that the
deceased *Martha* Calhoun was a human being. These are a

Christian and surname which can be legitimately given to
a human being only. The offense charged is *murder*. The
use of the term implies the killing of a human being." (The
word murder is italicized in the original.) As this case states,
it is no doubt true that where a defendant is expressly
charged with the crime of murder, which necessarily includes
the killing of a human being, and the deceased is given an
appellation which may be reasonably taken as the name of
a person, there the omission of the averment that such
person was a human being will not vitiate the indictment;
and such would also be the case where any other language
was used showing that the deceased was a human being. At
common law the indictment for murder was excessively par-
ticular in detail, and contained averments about the deceased
applicable only to a human being; but it was absolutely
necessary that it should use the word "murder." Blackstone
says that "in indictments for murder it is necessary to say
that the party indicted 'murdered,' not 'killed' or 'slew,'
which till the late statute was expressed in Latin by the word
'murdravit' " (4 Blackstone's Commentaries, 308); and in
Chitty's Criminal Law (vol. 3, p. 737) it is said "any indict-
ment must also, after stating the circumstances, draw the con-
clusion that *so* the prisoner, the defendant, feloniously, etc.,
did kill and *murder,* the last word being an artificial term
which it is requisite to use." And while much of the prolixity
of the common-law pleading may now be omitted, still he who
undertakes to frame an indictment in the form of a mere
skeleton must see that the skeleton contains all of its necessary
structural parts.

It is contended by counsel for respondents that the in-
formation in this case is a model of brevity. It would, how-
ever, have been still one syllable shorter if the crime stated
had been "murder" instead of "felony"; and the beauty of
the brevity would have been but little marred by the addition
of the words "human being," or "did kill and murder."
And if brevity be the main *desideratum,* it would have been
further promoted by the simple statement that the defendant
"killed Lee Wing,"—leaving it to be inferred that the kill-
ing was before the filing of the indictment, and assuming that
all killing is *prima facie* unlawful and malicious.

The judgment and order appealed from are reversed and the cause remanded, with directions to the court below to sustain the demurrer to the information.

Van Dyke, J., Harrison, J., Beatty, C. J., Temple, J., Garoutte, J., and Henshaw, J., concurred.

Rehearing denied.