[Crim. No. 130.   Third Appellate District.—September 10, 1910.]

THE PEOPLE, Respondent, v. H. W. VAUGHN, Appellant.

CRIMINAL LAW—ASSAULT WITH INTENT TO MURDER—SUFFICIENCY OF
INFORMATION—HUMAN BEING.—An information charging that de-
fendant, at a time and place specified, did feloniously and with
malice aforethought, assault one Celia Skehan with intent then and
there to kill and murder said Celia Skehan, is sufficient without stat-
ing that she was a "human being."

ID.—TECHNICAL OBJECTION.—The objection to the information is tech-
nical. Technical objections to pleadings are no longer to be re-
garded as serious, unless they are so thoroughly supported by
authority that they cannot be disregarded even under the latitude of
the statute relating to the subject.

ID.—INFORMATION SATISFYING CODE REQUIREMENT—KNOWLEDGE OF PER-
SON OF "COMMON UNDERSTANDING."—An information is sufficient
when it satisfies the requirement of subdivision 2 of section 950 of
the Penal Code, that the information must contain "a statement of
the acts constituting the offense in ordinary and concise language,
and in such a manner as to enable a person of common understand-
ing to know what is intended." No person of common understand-
ing would or could fail to know that the district attorney intended
to charge the defendant with making the assault upon a human be-
ing. This is indicated by the name itself, but is placed beyond
controversy by its use in connection with the term "murder."

ID.—DEFINITION OF MURDER.—"Murder" has a well-defined meaning,
which is "the unlawful killing of a *human being* with malice afore-
thought." When the term "murder" is used in an information, it
necessarily implies a human being.

ID.—CHALLENGE TO PANEL OF JURORS—BIAS OF OFFICER—IMPANELMENT
OF UNPREJUDICED JURY.—Where the defendant, before and after the
summoning of a panel of trial jurors, expressed confidence in the
fairness of the sheriff, the court did not err in overruling his offer
to show that the sheriff must be biased because he summoned the
jurors from the city where the feeling and prejudice against him
were strong; as a ground of challenge to the panel, the conclusion
of bias did not follow from the offer; and where a jury of impartial
jurors, without prejudice against the defendant, were chosen from
such panel, it is manifest that he has no cause of complaint as to
the challenge to the panel.

ID.—EVIDENCE—EMPLOYMENT BY FAMILY OF COUNSEL TO AID PROSE-
CUTION — INTEREST OF WITNESS — AMOUNT PAID IMMATERIAL.—
Where a brother in law of the prosecuting witness testifying for
the prosecution admitted his interest as a witness and stated that

his family had employed special counsel to aid in the prosecution, the court properly excluded a question on cross-examination, "How much did you pay?" The exact amount to be paid by the family or any member thereof would add nothing to the testimony.

Id.—Defense of Insanity—Evidence—Improper Questions—Reasoning on Special Topic—Peculiarity.—Where the defense was insanity, the court properly excluded a question whether the defendant could or did reason with a witness as a sane man on the particular topic of his love for the prosecuting witness, as not being in the form of a question as to sanity authorized by the code or decisions. The court also properly excluded the question, "Did you observe anything peculiar and unnatural in reference to this defendant?"

Id.—Proper Evidence of Insanity.—Evidence that the defendant was insane on a particular subject, and acted in an irrational manner, and other evidence that his conduct and statements particularly detailed led a witness to believe him irrational and insane, was properly admitted.

Id.—Rebutting Evidence—Observation of Sanity by Under-sheriff. The evidence of the under-sheriff in whose custody the defendant had been for three months, with special opportunity for observation of his conduct and conversations twice each day for the whole period, was properly admitted in rebuttal of the evidence of insanity for the prosecution to show his continued sanity during such period.

Id.—Other Rebutting Evidence of Sanity—Intimate Acquaintance —Discretion of Trial Court.—Where other rebutting evidence of witnesses for the prosecution was introduced to establish their opinion of his sanity, the question of whether they had sufficient intimate acquaintance with him to express such opinion was within the discretion of the trial court. *Held,* that it cannot be said that the discretion was abused in any manner, or that the evidence was insufficient to justify the ruling.

Id.—Mere Manner or Appearance of Person at Particular Time.— Evidence of the mere manner or appearance of a person at a particular time does not fall within the rule which requires the witness to be an intimate acquaintance in order to testify to his sane conduct at that time.

Id.—Charge upon Insanity—Admonition.—While an admonition contained in the charge upon insanity "that this defense is sometimes simulated and interposed because the facts render hopeless all other means of avoiding punishment," might well have been omitted, yet it is given only in the abstract, and has been given so often in the past and approved upon appeal, that it will not be held prejudicially erroneous, especially where, as in this case, the court fully and accurately instructed the jury as to insanity, and declared to them that "This defense must be considered and weighed fully, fairly and justly; and when proved, must recommend itself to the sense of humanity and justice of the jury."

APPEAL from a judgment of the Superior Court of Yuba County, and from an order denying a new trial. E. P. McDaniel, Judge.

The facts are stated in the opinion of the court.

A. B. Reynolds, for Appellant.

U. S. Webb, Attorney General, J. Charles Jones, and M. T. Brittan, for Respondent.

BURNETT, J.—Defendant was convicted of the crime of assault with intent to commit murder and sentenced to the penitentiary for a period of fourteen years. The prosecutrix was very seriously injured by a gunshot wound, and there is no doubt it was inflicted without any justification by defendant, but his defense is based upon the claim of insanity.

The first point made by appellant for a reversal is that the demurrer to the information should have been sustained, for the reason that it is not alleged therein that "the Celia Skehan, upon whom the alleged assault was committed, is a human being." The charging part of said information is as follows: "The said H. W. Vaughn on or about the second day of October, nineteen hundred and nine, at the county of Yuba, in the state of California, then and there being, did willfully, unlawfully and feloniously, and with malice aforethought, assault one Celia Skehan with intent then and there to kill and murder said Celia Skehan." It is difficult to treat seriously such an extremely technical objection. The court of appeals of New York, in *People* v. *Gilbert*, 199 N. Y. 10, [92 N. E. 85], has recently considered a similar contention as follows: "The objection is purely technical, and technical objections are no longer regarded as serious unless they are so thoroughly supported by authority that they cannot well be disregarded, even under the latitude of the statute relating to the subject. The criminal law is fast outgrowing those technicalities which grew up when the punishment for crime was so severe as in many cases to shock the moral sense of lawyers, judges and the public generally. When stealing a handkerchief worth one penny was punished by death, and there were nearly two hundred different capital offenses, it

was to the credit of humanity that technicalities should be
invoked in order to prevent the cruelty of a strict and literal
enforcement of the law. Those times have passed, for the
criminal law is no longer harsh or inhumane, and it is fortu-
nate for the safety of life and property that technicalities to
a great extent have lost their hold.''

Indeed, the information before us would seem to satisfy
the requirement of the code that it must contain ''a state-
ment of the acts constituting the offense, in ordinary and con-
cise language, and in such manner as to enable a person of
common understanding to know what is intended.'' (Pen.
Code, sec. 950, subd. 2.) The information is not required
to be drawn in accordance with any antiquated and arbitrary
notion of the rules of technical pleading, but a simple and
sufficient test is prescribed which can leave no doubt as to
the correctness of the court's ruling. We venture to assert
that no person ''of common understanding'' would or could
fail to know that the district attorney intended to charge the
defendant with making the assault upon a human being.
The name itself very clearly indicates that, but used in con-
nection with the term ''murder,'' there is no room whatever
for controversy. ''Murder'' has a well-defined meaning, and
that meaning is, ''the unlawful killing of a *human being*
with malice aforethought.'' The decisions also are entirely
opposed to appellant's position. Some of them are cited in
the Gilbert case, *supra*. The cases invoked by appellant are
not in point. It is true that in the case of *People* v. *Lee Look*,
137 Cal. 590, [70 Pac. 660], the supreme court has virtually
held that a ''person of common understanding'' would be in
doubt whether ''Lee Look'' was a human being unless some
qualifying expression were used; still, it is said: ''It will be
noticed that in this information the thing killed, Lee Wing,
is not averred to have been a human being; that the crime
for which he is sought to be charged is not stated to be
'murder'; that there is no averment that he did 'kill and
murder' Lee Wing; that the word 'murder' nowhere ap-
pears in the document, nor does the latter contain any other
language which necessarily implied that the appellant killed
a human being.'' Whereas, here, as we have seen, the term
''murder'' is used, which necessarily implies a human being.

There is no merit in the point that the court erred in overruling defendant's motion to be permitted to present evidence to show bias on the part of the officer who summoned the panel. The offer of the defendant was to prove that the sheriff summoned the special venire "entirely from the city of Marysville, where the feeling and prejudice against the defendant was strong." From this he proposed to contend that "there must have been prejudice and bias on the part of the officer." The conclusion would not be warranted from the circumstance relied upon. Besides, the defendant had stated the day before that he had no objection to the sheriff serving the summons, believing that he would be fair in the matter. When the purported challenge was made he had not changed his mind as to the officer, for he stated: "I believe Mr. Voss is an absolutely fair and square man." It may be said, further, that it appears the time was too short for the jurors to be summoned from any point outside of the city of Marysville, and, upon an examination of said jurors, the required number was found who had no prejudice against the defendant. It is manifest, therefore, that appellant has no cause for complaint as to the challenge of the panel.

The witness Poole, brother in law of the prosecuting witness, was asked on cross-examination: "How much do you pay?"—referring to the employment by his family of counsel to assist in the prosecution of defendant. An objection was sustained to the question. The ruling was without prejudice, as the witness had already admitted that he "certainly had considerable interest in the case" and had testified that he had not directly employed Mr. Brittan, but that the family had and the family was to pay for the services. The exact amount to be paid by the family or any member of it would add nothing to the testimony already given.

An objection of the prosecution was sustained to the following question asked of a certain witness: "Could he, in reference to this particular topic (his love for Miss Skehan), reason, and did he reason with you as a sane man in reference to this particular topic?" This is not the form of question as to sanity authorized by the code and decisions, and we can see no error in the court's ruling. But the matter was entirely covered by the testimony of the witness, who was allowed to state that she believed that the defendant was insane on

the subject, that he acted in an irrational manner, and she gives at great length her reasons for the belief, including the way in which he talked about the prosecuting witness. A similar suggestion is applicable to the ruling sustaining an objection of the prosecution to the following question asked of another witness: "Did you observe anything peculiar and unnatural in reference to this defendant?" The witness afterward testified that from what he noticed of the defendant he believed him to be irrational and insane, and he proceeded to relate in elaborate detail the defendant's conduct and statements.

Mr. Lydon, the under-sheriff of the county, was called as a witness in rebuttal, and after stating that the defendant had been in the custody of the witness since October 15, 1909— a period of three months—and that he had seen him twice a day at least, and had heard conversations between him and other persons, and had observed the actions and conduct of defendant during the entire period, he was asked this question by the district attorney: "I will ask you, Mr. Lydon, if you formed any opinion as to the sanity or insanity of the defendant?" Defendant's objection to the question was overruled. The situation is almost identical with that presented in the case of the witness Weise, set forth in *People* v. *McCarty,* 115 Cal. 260, [46 Pac. 1074], where it is said: "The witness Weise, the jailer who received defendant at the county jail, on the day of his arrest, was permitted to testify that defendant appeared 'rational' at that time. The witness had had no previous acquaintance with the defendant, and it is contended that the evidence was incompetent. But under the rule declared in *People* v. *Lavelle,* 71 Cal. 352, [12 Pac. 226], and *Holland* v. *Zollner,* 102 Cal. 633, [36 Pac. 930, 37 Pac. 231], the evidence was unobjectionable. It is there held that the question of the mere manner or appearance of a person at a particular time does not fall within the rule which requires the witness to be an 'intimate acquaintance' in order to be competent to testify. Moreover, we think the opinion of the witness is to be regarded as having been formed more upon his subsequent acquaintance with and knowledge of defendant acquired during the months that the latter remained under his charge in the county jail, than upon the mere appearance of defendant when first brought to the jail.

The evidence shows that the witness had a very excellent opportunity, of which he availed himself, to acquire an intimate knowledge and form an intelligent judgment of defendant's manner and mental condition, and we think upon this ground that the evidence was admissible." It was also held that the evidence was proper rebuttal to meet the testimony in behalf of defendant.

It is contended that the testimony of certain witnesses that in their opinion the defendant was sane was improperly admitted, for the reason that said witnesses were not "intimate acquaintances" within the rule permitting such testimony. It is well settled, however, that "the question as to whether one has been shown to be an intimate acquaintance, and therefore qualified to express an opinion as to the sanity of a person, is from its nature peculiarly one that is addressed to the discretion of the trial court, and that the appellate court will not interpose unless an abuse of that discretion is clearly apparent." (*People* v. *Manoogian,* 141 Cal. 598, [75 Pac. 179].) In the case of none of said witnesses here can it be said that the evidence was insufficient to justify the ruling, nor that the court abused its discretion in any manner.

Appellant criticises a portion of the charge on insanity in which the jury's attention is directed to the fact that this defense is sometimes simulated and interposed because the facts render hopeless all other means of avoiding punishment. The admonition probably might well have been omitted, but a sufficient answer to appellant's contention is found in *People* v. *Methever,* 132 Cal. 236, [64 Pac. 481], as follows: "And while we see no legal reason why the information therein contained should be given to the jury in the court's charge, yet upon an examination of these statements, we find them made purely and entirely in the abstract. They are not directed toward the defendant and his case, and assuming the jury to be an intelligent body of men, the instruction could have done him no prejudice." In the later case of *People* v. *Manoogian,* 141 Cal. 598, [75 Pac. 179], it is also said: "It has been given in several cases, and while this court has frequently said that it would be better if this instruction were omitted altogether, it has also been said that it has been given so often in the past and approved by this court that it will not now be held prejudicially erroneous."

In this connection it should be said that the court fully and accurately· instructed the jury as to insanity and declared to them that "This defense must be considered and weighed fully, fairly and justly; and when proved, it must recommend itself to the sense of humanity and justice of the jury."

There was no error committed in refusing any instruction proposed by the defendant. Every principle of law necessary for the intelligent guidance of the jury in reaching a correct conclusion from the facts was contained in the clear and elaborate charge of the court.

Indeed, the whole trial seems to have been conducted with the utmost care that no right of the defendant should be invaded, and we find nothing in the record to justify a reversal. The judgment and order appealed from are affirmed.

Hart, J., and Chipman, P. J., concurred.