Charles JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–86–00604–CR.

Court of Appeals of Texas,
San Antonio.

May 11, 1988.

Rehearing Denied July 6, 1988.

R. Robert Willman, Jr., Donald J. Mach, San Antonio, for appellant.

Fred G. Rodriguez, Charles Tennison, Mark Luitjen, Ilse D. Bailey–Graham, Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

Charles Jackson was charged by indictment with the offense of attempted murder. A jury found appellant guilty of aggravated assault with a deadly weapon. Punishment was assessed by the trial court at five years' confinement in the Texas Department of Corrections. The sufficiency of the evidence is not challenged. However, a recitation of the pertinent facts is helpful in addressing appellant's contentions on appeal.

On October 18, 1985, appellant and his common law wife Rachelle Rene Bean were sharing their rented San Antonio home with Rachelle's mother Doris Bean, and stepfather Alton Ray Barnes. Also living there were Rachelle's brothers Gordon, Timothy and Wallace Bean. On that particular day Doris' daughter, Ruby Satterwhite, her husband Joe Satterwhite and several others were visiting at the appellant's home.

Sometime during the day Rachelle got into an argument with Gordon about the rental payment on their house. The argument then shifted from Gordon to Doris and centered around Doris moving out to another apartment without helping to pay rental on Rachelle's house. Gordon at-

tempted to break up the heated argument between Rachelle and Doris and this precipitated a physical altercation. Appellant and others tried to break up the fight. The argument then turned into a tussle between Gordon and appellant's wife, Rachelle. Appellant intervened in support of his wife. The aggression between these two participants led to two separate fist fights.

Appellant was at least seventy pounds lighter than Gordon. As a result appellant appeared to be the loser in each affray. Appellant then armed himself with a .12–gauge shotgun. All the while Gordon was threatening to break appellant's car window and appellant allegedly stated "... if you break that window out, Bam–Bam, I am going to shoot you."

The presence of a firearm in appellant's possession did not diminish Gordon's desire to fight. Gordon broke the appellant's car window with his fist and appellant discharged his shotgun in Gordon's direction causing blindness.

At least one witness testified that Gordon was threatening to kill appellant immediately prior to the shooting.

The trial court instructed the jury on attempted murder, aggravated assault as a lesser offense, self defense and defense of property.

Appellant initially complains that the trial court erroneously refused his written requested jury charge on deadly force to protect property and instructed the jury on the same issue in an erroneous manner.

Appellant submitted the following written requested charge:

> You are instructed that a person in lawful possession of land or tangible movable property is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.
>
> A person is justified in using deadly force against another to protect his land or tangible, movable property, and the

possession thereof: (1) if he would be justified in using force in the first place, as hereinabove set forth, and (2) when and to the degree he reasonably believes the deadly force is immediately necessary as viewed from his standpoint at the time, to prevent Gordon Bean's imminent commission of criminal mischief during the nighttime, and (3) he reasonably believes that his land or property cannot be protected by any other means, or, the use of force other that (sic) deadly force to pretect (sic) his land or property would expose him or other persons to a substantial risk of death or serious bodily injury.

> You are instructed that it is your duty to consider the evidence of all relevant facts and circumstances surrounding the alleged shooting and the previous relationship existing between the accused Charles Jackson and Gordon Bean, if any, together with all relevant facts and circumstances going to show that condition of the mind of the defendant at the time of the alleged shooting, and you should place yourselves in the position of the defendant at the time in question and view the circumstances from his standpoint alone.

The trial court gave the following instruction:

> A person may use force under our law to defend his property from damage or criminal mischief in the nighttime.
>
> You are instructed that a person in lawful possession of tangible movable property is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to prevent or terminate the other's or (sic) unlawful interference with the property.
>
> A person is justified in using deadly force against another to protect his land or tangible, movable property, and the possession thereof: (1) if he would be justified in using force in the first place, as hereinabove set forth, and (2) when and to the degree he reasonably believes the deadly force is immediately necessary, as viewed from his standpoint at the time, to prevent another's imminent

commission of criminal mischief during the nighttime, and (3) he reasonably believes that his property cannot be protected by any other means, or, the use of force other than deadly force to protect his property would expose him or other persons to a substantial risk of death or serious bodily jury (sic).

Now if you find from the evidence that Charles Jackson, did shoot, if he did, Gordon Bean with a shotgun, and Charles Jackson was at the time shooting to protect his property from damage, if he was from criminal mischief or damage at the hands of Gordon Bean, in the nighttime, and such action on his *part would not expose other (sic) to the substantial risk of death or serious bodily injury,* you will find Charles Jackson not guilty.

If you do not so believe or if you have a reasonable doubt as to whether Charles Jackson was defending his property as set out above you will find against him on this plea of justification.

The trial court's stated reason for denying the requested instruction and submitting its own version is reflected in the court's designation of appellant's request as being "inartfully worded."

On appeal appellant complains that the part of the trial court's instruction applying the law to the facts which reads "... and such action on his part would not expose other to the substantial risk of death or serious bodily injury, you will find Charles Jackson not guilty" is fatally defective and grossly misleading.

TEX.PENAL CODE ANN. § 9.42 (Vernon 1974) provides in pertinent part:

A person is justified in using deadly force against another to protect ... tangible, movable property:

(1) if he would be justified in using force against the other under Section 9.41 of this Code; and

(2) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to prevent the other's imminent commission of ... criminal mischief during the nighttime ... and

(3) he reasonably believes that:

(A) the ... property cannot be protected ... by any other means; or

(B) the use of force other than deadly force to protect ... the ... property would expose the actor or another to substantial risk of death or serious bodily injury.

At trial, appellant did not lodge an objection to that part of the charge now complained of on appeal. Appellant's sole complaint at the time was to the trial court's refusal to grant his written requested instruction. Specifically, appellant directed the Court's attention to that part of the charge which read:

You are instructed that in determining the existence of real or apparent danger, it is your duty to consider all of the facts and circumstances in the case in evidence the words, acts, and conduct, if any, of Gordon Bean at the time of and prior to the time of the alleged shooting and consider any difficulty or difficulties which the said Gordon Bean had had with the defendant, and in considering such circumstances, you should place yourselves in defendant's position at that time and view them from his standpoint alone, *and then determine if the conduct of the defendant was reasonable in the light of all of the circumstances.* (emphasis ours)

Appellant sought to have the court add the following phrase at the end of the above quoted instruction, "... as viewed from the Defendant's standpoint alone."

As noted earlier, appellant's complaint on appeal addresses an entirely different part of the trial court's instructions.

 The State concedes that that portion of the charge now complained of is a misstatement of the law.

We borrow from the State's brief:

The quoted portion of the charge as given, if considered by itself, requires the jury to find appellant not guilty if his use of deadly force exposed no one other than Gordon Bean to a substantial risk of death or serious bodily injury, regardless of a consideration of whether it was nec-

essary to use force or whether any force less than deadly force would have succeeded in accomplishing the same objective, i.e., prevention of the commission of criminal mischief upon appellant's property from criminal mischief in the nighttime.

We agree that the court's instruction conditioned appellant's right to use deadly force upon a finding that no one other than Gordon Bean was exposed to a substantial risk of death or serious bodily injury. Nevertheless, we do not think that appellant could have been harmed by such conditioning even if the statute permits wider latitude on the use of such force because the evidence did not establish that the shooting endangered anyone other than Gordon Bean.

Moreover, there can be no harm in the instruction as given since in any event appellant was not entitled to the instruction under the facts as developed.

The pertinent portions of TEX.PENAL CODE ANN. § 9.42 specifically limit the use of deadly force to protect property by preventing the imminent commission of criminal mischief.

█ In the instant case the only criminal mischief involved the breaking, by Gordon Bean, of appellant's car window. This conduct, however, was already a completed fact prior to appellant's use of deadly force. Additionally, nothing in the record supports a conclusion that more criminal mischief was contemplated or in imminent danger of being committed. To the contrary, all the evidence indicates that appellant's sole reason for discharging his shotgun was to protect himself from what he perceived as harm to himself.[1] Appellant was not entitled to an instruction on deadly force to protect property.

Generally, an instruction that is more favorable to the accused, because he is not entitled to it under the evidence, cannot

amount to harm. *O'Marrow v. State,* 66 Tex.Crim. 416, 147 S.W. 252 (1912).

Because the error now complained of on appeal was not objected to at the trial level, we will not find harm requiring reversal unless we also find that error denied him a fair and impartial trial. *Arline v. State,* 721 S.W.2d 348 (Tex.Crim.App.1986) (en banc).

█ In determining whether "egregious" harm has occurred, we are required to examine such harm in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (en banc).

█ Appellant supposes that "egregious" harm has occurred because someone has underlined the language in the court's charge that is now complained of on appeal. The argument advanced is that the underlining evidences an impermissible comment on the evidence and the law. Nothing in the record discloses when or by whom that portion of the charged was emphasized. The record discloses no attempt to find out, either through a bill of exceptions, a motion for new trial, objections to the record or in some other manner the origin of the underlining. We refuse to speculate that wrongdoing occurred. Moreover, we are not convinced that the incident is indicative of unfairness and impartiality.

We hold that appellant was not harmed by an erroneous instruction he was not entitled to in any event. Moreover, if we be wrong that no harm was suffered, we are satisfied that in light of the *Almanza* test, the harm could not rise to the level of egregious harm. Appellant's first two points of error are overruled.

By his next point of error, appellant alleges that the trial court erred in refusing

---

**1.** PROSECUTOR: Did you warn him before, did you say, look out or go away or put your hands up or I will shoot?
APPELLANT: If he had broke the glass in the car and was standing over there with his arm over the top of the car, why would I holler, I am going to shoot you? Why would I holler a thing like that? And I am trying to look out for my own defense.

his requested jury instruction on right to arm.

Appellant sought the following instruction:

> You are instructed further in connection with the law of self defense that if you find from the evidence that shortly prior to the shooting the defendant reasonably apprehended an attack upon his person by Gordon Bean, then the fact that the defendant armed himself with a gun would in no wise impair or lessen his right to self defense because he would have a right to so arm himself if he reasonably feared such an attack.

Appellant argues that the trial court placed a limitation on his self defense instruction when it charged the jury:

> You are instructed that in determining the existence of real or apparent danger, it is your duty to consider all of the facts and circumstances in the case in evidence before you and consider the words, acts and conduct, if any, of Gordon Bean at the time of and prior to the time of the alleged shooting and consider any difficulty or difficulties which the said Gordon Bean had had with the defendant, and in considering such circumstances you should place yourselves in defendant's position at that time and view them from his standpoint alone, and then determine if the conduct of the defendant was reasonable in the light of all of the circumstances.

▆ If the trial court limits or burdens a self defense charge with an instruction on provoking the difficulty, it should also charge on the right to carry arms to the scene of the difficulty and seek an explanation if the evidence warrants it. *Martinez v. State*, 653 S.W.2d 630 (Tex.App.—San Antonio 1983, pet. ref'd).

▆ We do not view the court's instruction on apparent danger as a limitation on appellant's right to defend himself. *Cf. Sheppard v. State*, 545 S.W.2d 816 (Tex. Crim.App.1977); *Cleveland v. State*, 700 S.W.2d 761 (Tex.App.—San Antonio 1985, pet. ref'd.).

Appellant's third point of error is overruled.

The next three points of error complain of the trial court's giving of the following supplemental charge:

> Your foreman has advised the Court that you have not been able to reach a unanimous decision. In connection with such communication I advise the Jury as follows:
>
> This jury verdict must be unanimous. If this jury after a reasonable length of time finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the Jury.
>
> The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled in the same way this jury has been empanelled, and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will likely be the same as the questions confronting you and there is no reason to hope the next jury will find those questions any easier to decide than you have found them.
>
> If the jury wishes to communicate further with the Court, they shall notify the bailiff. Any communications relative to the case must be written, prepared by the foreman and shall be submitted to the Court through the bailiff.

Appellant argues that the supplemental instruction violated his due process rights under the Federal and State Constitutions; was prohibited by TEX.CODE CRIM. PROC.ANN. art. 36.16 and constituted an impermissible comment on the weight of the evidence in violation of TEX.CODE CRIM.PROC.ANN. art. 36.14.

The supplemental instruction was given to the jury after the trial court received a note from the jury foreman stating that the jury was unable to reach a unanimous verdict following four hours of deliberation.

Appellant timely objected to the giving of the supplemental charge.

Similar instructions have been held not to be coercive and to not constitute a comment on the weight of the evidence in violation of TEX.CODE CRIM.PROC.ANN. art. 36.14. *See Arrevalo v. State*, 489 S.W.2d 569 (Tex.Crim.App.1973); *Rodela v. State*, 666 S.W.2d 652 (Tex.App.—Corpus Christi 1984, pet. ref'd).

We think, however, that the instant charge suffers from the same shortcomings criticized in *Griffith v. State*, 686 S.W.2d 331 (Tex.App.—Houston [1st Dist.] 1985, no pet.). However, as in *Griffith*, there is nothing in the record to show that any of the jurors were actually coerced by the instruction. In the absence of some showing that the instruction influenced an improper verdict, error, if any, is harmless. *Griffith v. State, supra. Cf. Golden v. State*, 89 Tex.Crim. 525, 232 S.W. 813 (1921).

TEX.CODE CRIM.PROC.ANN. art. 36.16 provides:

> After the judge shall have received the objections to his main charge, together with any special charges offered, he may make such changes in his main charge as he may deem proper, and the defendant or his counsel shall have the opportunity to present their objections thereto and in the same manner as is provided in Article 36.15, and thereupon the judge shall read his charge to the jury as finally written, together with any special charges given, and no further exception or objection shall be required of the defendant in order to preserve any objections or exceptions theretofore made. *After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury*, or unless the judge shall, in his discretion, permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 36.15.

The failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the appellate court. (emphasis ours)

The State argues that the giving of the instant supplemental instruction cannot possibly violate TEX.CODE CRIM.PROC. ANN. art. 36.16 because the very language provides for the very action taken by the court. The State is only partially correct. By the very language of article 36.16, the trial court is permitted to further charge the jury if it is required by the improper argument of counsel or the request of the jury, or if the judge shall in his discretion, permit the introduction of other testimony, etc.

The State relies on the exception which addresses, a request of the jury. We think the State's reliance is misplaced. The supplemental charge given by the trial court was not in response to any inquiry by the jury or to any request for further guidance.

The trial court gave the supplemental instruction after the jury sent the following note:

> After deliberating for 4 hours we are unable to come to a unanimous verdict.
> William Rhue,
> Foreman

Such a communication does not constitute a request by the jury for anything but merely informs the trial court of the jury's status after 4 hours of deliberation.

However, we note that appellant never complained that the trial court was without authority under Article 36.16 to communicate with the jury altogether because none of the exceptions had been invoked. Clearly, appellant invoked his rights under Article 36.16 to fully participate in the giving of the supplemental charge as per its provisions.[2] Appellant's

---

2. THE COURT: All right. Do you want to put some objection in the record before I send that in there?

MR. MACH: I would respectfully move the court to read them the supplemental charge in open court. The defendant is present and we respectfully request that.

objections were limited entirely to the contents of the communication. Because the complaint on appeal is not the same as the complaint made during trial, the point of error now before us is not preserved for review. *Lujan v. State*, 626 S.W.2d 854 (Tex.App.—San Antonio 1981, pet. ref'd).

But even if the court's action constitutes unobjected to error, it was not such as deprived appellant of a fair and impartial trial.

Points of error numbers four, five and six are overruled.

Appellant's next five points of error read as follows:

–7–

The trial court erred in refusing to permit appellant to develop evidence before the jury showing the bias, interest, and motive of the State's witness Doris Bean.

–8–

The trial court erred in denying appellant's 'Motion to Allow the Accused to Present as Part of his Case Testimony from Doris Bean and Evidence of Pending Cases Against her to Show Interest, Bias and Motive.'

–9–

The trial court erred in denying appellant's motion for continuance to secure the attendance and testimony of the State's witness, Doris Bean, in violation of his rights to compulsory process and confrontation under the 6th and 14th Amendments to the United States Constitution, and Article I, Sections 10, 19 and 29 of the Texas Constitution, as an adequate and independent State ground.

–10–

The trial court erred in refusing to permit appellant to offer documentary evidence before the jury to show the bias, interest, and motive of the State's witness, Doris Bean.

THE COURT: All right. You are entitled to

–11–

The trial court erred in refusing to allow appellant to develop evidence before the jury to impeach the State's witness, Doris Bean.

Doris Bean, the mother of Gordon, was a State's witness in the case in chief. She, along with six other witnesses present at the scene, testified about the events leading up to the shooting. Doris admitted to having an argument with her daughter Rachelle and related events substantially the same as the facts as we have heretofore recited them.

There is no disagreement as to the fact that all of the commotion eventually led to a shooting of Gordon by appellant. As appellant himself states in his brief,

It was not disputed at the trial that the complainant, Gordon Bean, was shot once in the face with a shotgun by the appellant Charles Jackson. What was closely contested was the *mens rea* of the appellant and the state of mind of the complainant on the date of the incident.

Doris was the last witness to testify on the first day of appellant's two-day trial. Following what composes 34 pages of testimony in the statement of facts, both sides informed the trial court that they had no further questions for the witness and the trial court excused the witness,

THE COURT: All right. Step down. Go on about your business.

The next day after the State rested, appellant and his wife both testified. Then appellant sought to recall Doris for the stated purpose of impeaching her testimony by offering evidence that there were misdemeanor assault cases pending against her. Because the witness had been excused the day before, the trial court instructed the State to bring the witness back to court.

The witness was not located after some undisclosed effort by the State, at which time appellant moved for a continuance for the purpose of securing the witness' presence in court. Over the State's objection the trial court permitted appellant to make

that.

a bill of exception in question-and-answer form relating the testimony which appellant expected to elicit from the witness, had she been present to testify.

TEX.CODE CRIM.PROC.ANN. art. 29.-13 provides:

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

■ A motion for continuance after trial has begun on grounds that some unexpected occurrence during the trial has taken the applicant by surprise so that a fair trial cannot be had is addressed to the sound discretion of the court. *Cooper v. State,* 509 S.W.2d 565 (Tex.Crim.App.1974).

■ Appellant did not attempt to call the missing witness until late in the afternoon of the second day of trial. Nor is it apparent from the record that any effort was made by appellant to notify the trial court of the missing witness and the need for her testimony until the court's work was almost done for the day. Nor was there any contention that appellant was surprised by the turn of events. Indeed, none of the relevant points of error rely on the element of surprise in seeking the continuance.

We think reasonable diligence should have been exercised by appellant at the beginning of the second day of trial when it was apparent that the witness was not present in court.

Appellant's stated position at trial and on appeal was and remains that the witness should have been subjected to impeachment in the presence of the jury by showing that she had a bias and motive in being a State's witness.

The record does not bear out any effort at testing the witness's credibility in such manner during her lengthy examination and cross-examination the day before. The information sought to be used by appellant in impeaching the witness was clearly available to appellant at the time the witness was on the witness stand.

Moreover, substantially the same testimony that was sought to be elicited from Doris was developed from the testimony of appellant and his wife, Rachelle. Before we may reverse for failure to grant a continuance, we must find such abuse of discretion as deprived appellant of a fair trial. We see no abuse of discretion in the record before us. The trial court, as we perceive the evidence, gave appellant every opportunity to secure the presence of the witness for the next day. Aside from some undisclosed effort on the part of the State, we see none on the part of the appellant. Failure to secure the presence of a witness excused by all the parties does not equate to denial of compulsory process. *Cf. Silva v. State,* 622 S.W.2d 902 (Tex.App.—Fort Worth 1981, no pet).

In the absence of a predicate for the impeachment of Doris, the appellant was not entitled to offer evidence of the sort. TEX.R.CRIM.EVID. 612(b).

Moreover, since appellant concedes that the only issue before the jury was his *mens rea,* we fail to see the harm that exclusion of the proffered evidence could cause.

Points of error seven through eleven are overruled.

In points of error twelve and thirteen appellant complains that the trial court erred when, over objection, it instructed the jury on the offense of aggravated assault with a deadly weapon because that offense does not include a less serious injury than attempted murder in the instant indictment.

The indictment, in pertinent part, reads:
> ... Charles Jackson, ... did then and there intentionally and knowingly attempt to cause the death of Gordon Bean, by shooting the said Gordon Bean with a firearm, an act amounting to more than mere preparation that tended but failed to affect the commission of the offense of murder, ...

Appellant relies on *Luera v. State,* 658 S.W.2d 566 (Tex.Crim.App.1981).

In *Luera,* the reviewing court found that the charge to the jury on aggravated assault was fundamentally defective because it authorized a conviction on facts which had not been included within the allegations of the indictment for attempted murder.

■ The instant indictment contains language indicating that the attempt to cause death was by using a firearm. Such language has been held to encompass an allegation of serious bodily injury so as to permit the giving of a charge of aggravated assault as a lesser included offense. *See Hart v. State,* 581 S.W.2d 675 (Tex.Crim.App.1979); *see also De Russe v. State,* 579 S.W.2d 224 (Tex.Crim.App.1979).

■ There is evidence to support a jury finding that appellant intentionally and knowingly caused bodily injury to the complainant with the use of a deadly weapon but without the intent to kill. This evidence comes from the appellant's own testimony. The trial court was authorized to charge on the lesser included offense and the jury was permitted to base their finding of guilt on the lesser included offense, so long as some evidence supported the conclusion that if appellant was guilty he was guilty only of the lesser included offense.

Appellant's points of error twelve and thirteen are overruled.

■ Appellant's points of error fourteen and fifteen allege that the trial court erred in failing to quash the indictment because it failed to include in the allegations the phrase "an individual," essential words of the offense, and erred in charging the jury over objection on the offense of attempted murder without making reference to the phrase "an individual."

The points, although interesting, have repeatedly been rejected as being without merit.

In *Bohannon v. State,* 14 Tex.Ct.App. 271, 299–300 (1883) a similar contention was raised which was answered as follows:

It has never been held necessary that the indictment should allege that the deceased was a 'human being,' or a 'reasonable creature' although in the definition of murder one or the other of these descriptions of the deceased are used. To allege the name of the person killed, or that his name is unknown, is a sufficient allegation that the deceased was the subject of murder, as it will be presumed that the indictment is understood according to the import of the common language used therein.

*Id.; see also Ringo v. State,* 54 Tex.Crim. 561, 114 S.W. 119 (1908); *Sharpe v. State,* 17 Tex.Ct.App. 486 (1885); *Moore v. State,* 15 Tex.Ct.App. 1 (1883); *Perryman v. State,* 36 Tex. 321 (1871–72).

To the same effect in other jurisdictions, *see Merrick v. State,* 63 Ind. 327 (1878); *State v. Stanley,* 33 Iowa 526 (1871); *Reed v. State,* 16 Ark. 499 (1855); *Sutherland v. State,* 121 Ga. 591, 49 S.E. 781 (1905); *State v. Day,* 4 Wash. 104, 29 P. 984 (1892); *Cremar v. People,* 30 Colo. 363, 70 P. 415 (1902); *People v. Gilbert,* 199 N.Y. 10, 92 N.E. 85 (1910); *People v. Vaughn,* 14 Cal. App. 201, 111 P. 620 (1910).

The trial court did not err in failing to quash the indictment for the alleged defects. Nor did it err in failing to include the phrase in the charge to the jury. While the trial court defined attempted murder in its instructions to the jury with the phrase "individual," it was not necessary to include the phrase in the application of the law to the facts inasmuch as it was never controverted that the victim was an individual. Under the circumstances, the trial court was authorized to assume any fact not controverted as true. *Pitts v. State,* 97 Tex.Crim. 642, 263 S.W. 1059 (1924).

Appellant's final two points of error are overruled.

The judgment of conviction is affirmed.

CADENA, C.J., and REEVES, JJ., concur.