Cornell LOVING, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–95–00343–CR.

Court of Appeals of Texas,
Austin.

May 22, 1997.

Ian Inglis, Austin, for appellant.

Ronald Earle, District Attorney, Ana Louisa Morales, Assistant District Attorney, Austin, for appellee.

Before CARROLL, C.J., and B.A. SMITH and CARL E.F. DALLY, JJ.*

CARL E.F. DALLY, Justice (Retired).

Appellant Cornell Loving appeals from a conviction for the offense of aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03 (West 1994). Appellant's punishment was assessed by the trial court at imprisonment for forty years. In his appeal, appellant asserts the trial court erred in admitting in evidence before the jury a witness's in-court identification of appellant because that identification was tainted by an impermissibly suggestive pretrial identification procedure. In addition, appellant contends the trial court erred by improperly submitting to the jury during its deliberations an "*Allen*" charge. · We will overrule appellant's points of error and affirm the judgment of the trial court.

Appellant and three codefendants were charged with the offenses of attempted capital murder and aggravated robbery. All defendants were tried together before the same jury. The allegations of capital murder were abandoned and the jury was charged only on the offenses of robbery and aggravated robbery. The jury acquitted Christopher Whitman and convicted Andre Webb, Timothy Scott, and appellant of the offense of aggravated robbery.

Both Juan Riojas and Jesus Javier Maldonado Ybarra, victims of the robbery, testified at trial before the jury identifying appellant as one of the robbers. Appellant, in his written statement, which was admitted in evidence, admitted coming to the scene of the robbery and fleeing with the codefendants. But according to his written statement, appellant was a mere bystander while the two codefendants decided to commit and did commit the robbery, which appellant witnessed and described in his statement. The victim-witness Ybarra testified that appellant was the robber who hit him. Ybarra's identification of appellant is unchallenged on appeal.

Appellant argues that his in-court identification made by the victim-witness Riojas "was tainted by an impermissibly suggestive pretrial procedure." As a result of this alleged tainted in-court identification testimony, appellant claims he was denied federal due process and state due course of law rights. U.S. Const. amend. V, XIV; Tex. Const. art. I, § 19. The pretrial identification "procedure" that appellant says tainted the in-court identification occurred when the witness Riojas saw a Xeroxed copy of appellant's photograph in the prosecutor's notebook. Before trial, the prosecutor told defense counsel that Riojas had seen a Xeroxed copy of appellant's photograph in her trial notebook. Before Riojas testified in the presence of the jury, the trial court conducted a hearing out of the presence of the jury. In that hearing, Riojas testified concerning the "procedure" that appellant alleges tainted Riojas' in-court identification of appellant. At this hearing, Riojas positively identified appellant as one of the robbers he saw at the time of the robbery. Riojas also testified that about thirty days before the trial the prosecutor came to his house to interview him. It was after dark and Riojas was interviewed outside his house "under a light." Riojas, recalling the interview, testified: "Well, she was flipping, you know, through her notebook and everything, and that's when I saw, and I told her 'that's him.'" Riojas was referring to appellant's Xeroxed photograph in the prosecutor's notebook. Riojas saw no other photographs before trial. In response to the trial court's questions,

---

*\* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex. Gov't Code Ann. § 74.003(b) (West 1988).

Riojas testified he would have recognized appellant at the trial as one of the robbers even if he had not seen the photograph in the prosecutor's notebook. At the conclusion of the hearing, the trial court stated: "It will be the ruling of the court that the statement by the witness that he positively identifies the Defendant Loving at this time and is not impacted by having inadvertently seen a prior Xeroxed photograph. I take it then that the objection to his testimony doesn't go to admissibility but really goes to [its] weight and so [the] motion ... will be overruled." Trial counsel made no further objection to the trial court's ruling at that time concerning the court's conclusion that the objection was not to the admissibility of the testimony.

Testifying before the jury, Riojas, based on what he saw during the robbery, positively identified appellant as one of the robbers. On cross-examination there was considerable testimony concerning the "procedure" in which Riojas observed appellant's photograph in the prosecutor's notebook. Much of this extensive cross-examination testimony is set out in appellant's brief; although this testimony is more ambiguous than the testimony in the earlier hearing, Riojas reaffirmed the testimony elicited at the hearing. Concerning the cross-examination testimony, appellant argues that "[a]t times, Riojas did indicate that the viewing was unintentional. However, the fairest interpretation of Riojas' testimony is that the prosecutor displayed Appellant's photograph when Riojas asked to see the likenesses of the robbery suspects who were in custody."

Defense counsel renewed his objection after Riojas testified before the jury and requested that the trial court withdraw from the jury's consideration Riojas' in-court identification testimony. This objection and request the trial court overruled, but told appellant's counsel he would be allowed to make a bill of exception. For that bill of exception, appellant's counsel called as witnesses the three attorneys who represented the other defendants. These attorneys were present when the prosecutor told appellant's attorney about Riojas seeing appellant's photograph in her notebook. On the bill, one of the attorneys testified concerning the meet-

ing of defense counsel and the prosecutor. "I believe she stated that her first and only— in her first meeting with Juan Riojas she had inadvertently revealed a photograph of Cornell Loving as she was thumbing through her file, and he picked it out and asked to see it." On cross-examination the attorney testified that he recalled that the prosecutor had told defense attorneys, "I was thumbing through the notebook, but he stopped her ... and said, 'That's him.'" The other two defense attorneys concurred with the first defense attorney's testimony on the bill. After appellant's counsel presented argument on the bill of exception, the trial court stated that seeing Loving's photograph, which the court thought was a poor likeness, could not have in any way materially altered or influenced the witness's in-court identification of appellant.

■ Determining the admissibility of a challenged in-court identification requires a two-step analysis. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). First, the photographic display procedure must be impermissibly suggestive; and second, the impermissibly suggestive procedure must give rise to a very substantial likelihood of irreparable misidentification. Analysis under these steps requires an examination of the totality of the circumstances of the particular case under consideration and a determination of the reliability of the in-court identification. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, (1972); *Barley v. State*, 906 S.W.2d 27, 33 (Tex.Crim.App.1995); *Cantu v. State*, 738 S.W.2d 249, 251 (Tex.Crim.App.1987). If the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed reliable, "reliability [being] the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim.App.1988); *Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Crim.App.1983). A defendant who contends on appeal that a trial court erred in allowing in-court identification of him by a complaining witness carries a difficult and heavy burden. Unless the de-

fendant shows by clear and convincing evidence that the complaining witness' in-court identification of a defendant as an assailant was tainted by improper pretrial identification procedures, the in-court identification is always admissible. *Jackson v. State*, 628 S.W.2d 446, 448 (Tex.Crim.App.1982); *Johnson v. State*, 891 S.W.2d 284, 286–87 (Tex. App.—San Antonio 1994, no pet.).

■ In this case, the trial court found Riojas positively identified appellant and that the witness's in-court identification was "not impacted by [his] having inadvertently seen a prior Xerox photograph" of appellant. *See Jackson*, 628 S.W.2d at 448–49 (prosecutor immediately prior to trial showed witness defendant's photograph—judgment affirmed). We conclude, that based on the totality of the circumstances, it has not been clearly and convincingly shown that Riojas' inadvertent viewing of appellant's Xeroxed photograph was impermissibly suggestive. *See Barley*, 906 S.W.2d at 33–34. Even if it could be successfully argued that the viewing of the photograph was impermissibly suggestive, the totality of the circumstances do not show clearly and convincingly a substantial likelihood of irreparable misidentification. *Id.* at 34–35. The witnesses Riojas and Ybarra were victims and not casual observers. *See Cantu v. State*, 738 S.W.2d 249 (Tex.Crim.App.1987). Riojas' description of appellant soon after the robbery was not entirely accurate, but Ybarra's description of appellant to the officers was quite accurate. Neither witness identified appellant in photographic identification exhibits after the robbery. However, although the light conditions were not good, the witnesses had several minutes, perhaps thirty, prior to and during the robbery to view the robbers, and the witnesses were certain of their identification of appellant at trial. Appellant's first point of error is overruled.

Independent of his federal due process point of error concerning his in-court identification, appellant presents a separate point of error asserting a violation of his state due course of law rights. The state due course of law point, which was preserved for review in

the trial court, must be addressed. *Elliott v. State*, 858 S.W.2d 478, 487 (Tex.Crim.App. 1993); and *see Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). Appellant argues:

> Riojas testified that he asked to see photos of the jailed suspects, thinking that if he identified one of them, he could implicate all of them—in his own words, 'take the other guys down.' RX66. There was a possibility that Riojas has seen appellant at some time prior to or subsequent to the offense—a viewing that could have triggered an association in Riojas' mind of appellant with the offense. These factors lead to the conclusion that Riojas' in-court identification was too unreliable to admit in evidence against appellant.

Appellant concludes: "The pretrial procedure used by the prosecutor clearly was improperly suggestive." Appellant has isolated and relied on testimony in conflict with other testimony which the trial court could have considered in determining that the in-court identification testimony of Riojas was reliable and admissible.

Resolving conflicts in predicate facts to determine whether evidence is admissible is a function of the trial court. Tex.R.Crim. Evid. 104; *McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App.1993); *Casillas v. State*, 733 S.W.2d 158, 168 (Tex.Crim.App. 1986); *Burleson v. State*, 802 S.W.2d 429, 440 (Tex.App.—Fort Worth 1991, pet. ref'd). The trial court found that the witness's inadvertent viewing of appellant's Xeroxed photograph was not so impermissibly suggestive as to render unreliable the in-court identification of appellant. Considering the totality of the circumstances, we agree. We conclude that the trial court correctly ruled the in-court identification of appellant was reliable. Therefore, it follows, appellant was not deprived of his state due course of law rights. Appellant's second point of error is overruled.

■ In his third point of error, appellant complains that: "The trial court erred in giving an '*Allen*'[1] or 'Dynamite' charge to

---

1. "*Allen*" refers to *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), in

which the Supreme Court approved a jury instruction submitted by a trial judge "when the

the jury, when the jury had not requested any additional instructions pursuant to Art. 36.16, V.A.C.C.P." Appellant's trial objections did not mention nor in any way implicate article 36.16.[2] The objections did not alert the trial court that appellant would thereafter on appeal challenge the giving of the *Allen* charge as a violation of article 36.16. Only the trial objections made by appellant are preserved for our review.

At trial, appellant's counsel adopted a co-defendant's objection that the giving of the *Allen* charge was "premature and coercive." It is clear the "premature" objection to the *Allen* charge was made because the jury had deliberated for less than five hours and had not indicated it was in disagreement or deadlocked in reaching a verdict. The jury had returned to court requesting that certain testimony be read by the court reporter. The trial court correctly complied with the jury's request but on its own initiative the court submitted a "standard" *Allen* charge to which the objections were made. *See* 8 McCormick, Blackwell and Blackwell, *Criminal Forms and Trial Manual*, § 96.31 (Texas Practice 10th ed.1995).

Our attention has not been directed to any case, and we have found only one instance in this state in which the *Allen* charge was given before the jury indicated to the trial court it was unable to reach a verdict. In *Love v. State*, 909 S.W.2d 930, 936 (Tex. App.—El Paso 1995, pet. ref'd), the trial court followed a practice quite preferred in some states and federal jurisdictions of including within the original instructions an *Allen* charge which is submitted to the jury before its deliberations commence. Many courts believe an *Allen* charge is less coercive if submitted before a jury comes to an impasse in reaching a verdict and thus have expressed a preference for the trial court to give the charge before a jury deadlocks. *See e.g., United States v. Warfield*, 97 F.3d 1014, 1022 (8th Cir.1996); *United States v. Smith*, 635 F.2d 716, 720 n. 7 (8th Cir.1980); *United States v. Rodriguez–Mejia*, 20 F.3d 1090 (10th Cir.1994); *United States v. Smith*, 857 F.2d 682, 684 (10th Cir.1988); *United States v. Dyba*, 554 F.2d 417, 420–21 (10th Cir. 1977); *United States v. Martin*, 756 F.2d 323, 324–25 (4th Cir.1985); *United States v. Wills*, 88 F.3d 704, 716–17 (9th Cir.1996); *United States v. Williams*, 624 F.2d 75, 76 (9th Cir.1980). The courts of several states have held that the decision to give an *Allen* charge does not require a finding that the jury is deadlocked. *E.g,. Stewart v. State*, 210 Ga.App. 474, 436 S.E.2d 679 (1993); *State v. Wooten*, 227 Conn. 677, 631 A.2d 271 (1993); *State v. Brown*, 853 P.2d 851, 861 (Utah 1992). The Commentary of the American Bar Association *Standards Relating to Trial by Jury*, Standard 15–4.4 (2d ed.1987), states the instruction commonly referred to as the "*Allen* charge" or "dynamite charge" should not be given to a jury unable to agree after some deliberation. Instead of the *Allen* charge, the ABA Standards recommend that it is most appropriate for a court to instruct the jury initially as to the nature of its duties in the course of deliberations as set out in Standard 15—4.4.

---

jury returned to the court, apparently for further instructions." *Id.* at 501, 17 S.Ct. at 157. The Supreme Court did not set out the exact wording of the charge, but stated its substance and noted that: "These instructions were taken literally from a charge in a criminal case which was approved by the Supreme Court of Massachusetts in *Com. v. Tuey*, 62 Mass. 1, 8 Cush. 1 and by the Supreme Court of Connecticut in *State v. Smith*, 49 Conn. 376, 386."

**2.** Texas Code of Criminal Procedure article 36.16, in part provides:

... After the argument begins, no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as prescribed in Article 36.15 ...

This part of the statute is unclear and ambiguous. E.g., the State argues that this provision gives the trial court discretion to give an *Allen* charge without the jury's request, while the appellant argues it is necessary for the jury to request an *Allen* charge before it should be given. Appellant cites *Jackson v. State*, 753 S.W.2d 706, 711–12 (Tex.App.—San Antonio 1988, pet. ref'd). We do not necessarily agree with all of the reasoning of that case, and note that the Court of Criminal Appeals, without regard for article 36.16, has long approved the submission of *Allen* charges.

■ We conclude that the trial court did not err in giving the *Allen* charge before the jury indicated it was unable to reach a verdict and deadlocked. *Cf. Love v. State,* 909 S.W.2d 930 (Tex.App.—El Paso 1995, pet. ref'd); *Jackson v. State,* 753 S.W.2d 706 (Tex.App.—San Antonio 1988, pet. ref'd). Appellant's third point of error is overruled.

In point of error four, appellant asserts the coercive nature of the *Allen* charge submitted to the jury deprived him of federal due process. Appellant acknowledges the trial court gave a traditional *Allen* charge, which exhorts the jurors in the minority to "consider whether they are basing their opinion on speculation or surmise and not on the evidence in the case, keeping in mind the impression the evidence has made on a majority of the jurors of equal honesty and intellect as the minority." Almost one hundred years after *Allen* was decided, the Supreme Court stated that "the continuing validity of this Court's observations in *Allen* are beyond dispute . . ." *Lowenfield v. Phelps,* 484 U.S. 231, 237, 108 S.Ct. 546, 551, 98 L.Ed.2d 568 (1988).

■ Numerous judicial decisions have been critical of the *Allen* charge. *E.g., United States v. Brown,* 411 F.2d 930, 933–34 (7th Cir.1969); *United States v. Fioravanti,* 412 F.2d 407 (3rd Cir.1969); *United States v. Thomas,* 449 F.2d 1177 (D.C.Cir.1971); *Green v. United States,* 309 F.2d 852, 854 (5th Cir.1962); *Huffman v. United States,* 297 F.2d 754, 759 (5th Cir.1962) (Brown J., dissenting); *State v. Thomas,* 86 Ariz. 161, 342 P.2d 197 (1959); *State v. Randall,* 137 Mont. 534, 353 P.2d 1054 (1960). However, "no court has held that the *Allen* instruction itself is unconstitutional." Commentary, ABA *Standards Relating to Trial by Jury,* Standard 15—4.4 (b) (2d ed.1987). The submission of an *Allen* charge to the jury does not violate federal due process. See *Allen v. United States* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Boyd v. Scott,* 45 F.3d 876, 883 (5th Cir.1994). Appellant's fourth point of error is overruled.

In his fifth point of error, appellant insists the trial court erred in giving the *Allen*

charge because it unduly coerced minority members of the jury into agreeing with majority members, thus denying appellant his state constitutional due course of law rights. Appellant argues that even if this Court does not find that the *Allen* charge given violates due process of law, it should, nevertheless, find that it violates his state constitutional right to due course of law. Again urging the coercive language in this charge has been condemned by courts and commentators. When the trial court submitted the *Allen* charge, there was no indication the jury was in disagreement and unable to reach a verdict. Indeed, in his first and second points of error, appellant complains the instruction was given prematurely—before the jury was deadlocked. Therefore the jury was not divided on reaching a verdict at the time and there were no minority and majority jurors. The *Allen* charge given may be one that would be condemned by some courts and commentators, but we hold it did not violate appellant's state constitutional right to due course of law. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.