# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============

## NO. 03-99-00724-CR

===============

**Jesse S. Villanueva, Appellant**

**v.**

**The State of Texas, Appellee**

====================================================================

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR99-036, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING**

====================================================================

Jesse S. Villanueva appeals from his conviction for knowingly passing a forged instrument. *See* Tex. Penal Code Ann. § 32.21 (West Supp. 2000). The trial court assessed appellant's punishment, enhanced by two prior felony convictions, at imprisonment for twenty years.

Appellant asserts that the evidence is factually insufficient to support the jury's verdict and that inadmissible evidence was admitted. The judgment will be affirmed.

It was alleged that appellant, with the intent to defraud and harm another, intentionally and knowingly passed a check that he knew was forged. The check purportedly made by Edmond Schorn was drawn on Schorn's account without his authority. Appellant concedes the legal sufficiency of the evidence, but insists that the evidence is factually insufficient to support his conviction.

In reviewing factual sufficiency of the evidence, we view all the evidence "without the prism of in the light most favorable to the prosecution;" we set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd). In performing a factual sufficiency review, the courts of appeals are required to give deference to the jury verdict and examine all of the evidence impartially, setting aside the jury verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (quoting *Clewis*, 922 S.W.2d at 129). Recently, the *Clewis* standard has been reprised, "[T]he complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, No. 1915-98, slip op. at 18 (Tex. Crim. App. Feb. 9, 2000).

On August 20 or 21, 1998, Edmond Schorn, a retiree, allowed two men and a woman to come into his house to inspect the windows and to advise him about repairing them. Once these people left his house Schorn did not hear from them again. Later, when Schorn received his bank statement, he discovered that $9,200 had been removed from his account without his authority. Check number 2174 in the sum of $2,800 and check number 2175 in the amount of $6,400 drawn on Schorn's account had been paid by Chase Bank in New Braunfels.

2

Schorn discovered these blank checks had been taken from his checkbook by someone else. Schorn remembered that when the window inspectors were in his house, the woman sat near a desk where he kept his checkbook. Schorn also recalled that his telephone had been disabled soon after the window inspectors had been in his house. Schorn could not identify appellant as one of the men who had been in his house.

Anthony Felsing testified he was involved with stealing Schorn's checks. Felsing admitted that he filled in the checks and forged Schorn's signature as the maker of each check. Felsing described how he had used a piece of glass and a flashlight to trace Schorn's signature from a stolen check bearing Schorn's signature onto the stolen blank checks. Felsing pleaded guilty and was convicted of the offense of forging and passing check number 2174. Felsing testified that he had filled in check number 2175, making it payable to appellant. He also testified that after appellant cashed check number 2175, he and appellant and four other men divided the proceeds of the check.

Jason Amerson, a teller at Chase Bank, testified that appellant presented the stolen check and received the proceeds in cash on August 28, 1998. Because the check was for more than $2,500, Amerson followed the bank's policies for cashing checks in large amounts. These policies include running the payee's driver's license number through the Texas Department of Public Safety main frame to verify the name, date of birth, height, sex, and eye color of the person presenting the driver's license and the check. In addition, Amerson and his supervisor compared the maker's signature on the check with the account holder's signature card and compared the endorser's signature with the signature on the driver's license. After verifying the

3

identification and obtaining his supervisor's permission, Amerson cashed the check presented by appellant. After the discovery of the forgery, Amerson identified appellant in the photographic line-up shown to him by the investigator. At trial, Amerson identified appellant as the man who presented the forged check.

Kathryn Rutledge, the teller manager at Chase Bank in New Braunfels, testified that following the bank's policies, she compared the maker's signature on check number 2175 with Schorn's signature card and compared the endorser's signature with the signature on the driver's license which had been presented to Amerson. She then attempted but was unable to call Schorn on the telephone. She authorized Amerson to cash the check. Although Rutledge did not see appellant when he was in the bank, later when the investigator showed her a photographic display of six men, she identified appellant's photograph as depicting the same man that she saw on the driver's license photograph.

A handwriting expert compared the endorsement signature on check number 2175 with appellant's known signature. The expert testified that in his opinion appellant had endorsed the check.

In his defense, appellant testified that he did not cash a check for $6,400 at the Chase Bank in New Braunfels. He testified that he had never met and did not know Anthony Felsing and further that all of Felsing's testimony was a lie. Appellant also testified that his driver's license had been missing for a period of time in August 1998.

We have made a neutral review of all of the evidence, applied the factual sufficiency standard of review, and we hold that the evidence is not so weak as to undermine the

4

jury's determination of guilt or to indicate that the proof of guilt, although adequate if taken

alone, is greatly outweighed by contrary proof. Appellant's third point of error is overruled.

In his first two points of error, appellant asserts:

Point of Error No. One:

The appellant's due process rights were violated when the trial court allowed the introduction of a copy of a photographic lineup when the original was lost, denying appellant the opportunity to demonstrate the suggestiveness of the lineup and whether or not the in-court identifications of appellant were admissible.

Point of Error No. Two:

Should the appellate court find that appellant's first point of error was not preserved, then appellant argues that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution, and in violation of Article I, Section 10 of the Texas Constitution.

Appellant argues in his appellate brief:

Appellant can not show this Court, nor the Trial Court, that the photographic lineup was impermissibly suggestive, nor can he show that the suggestiveness of the lineup had a corrupting effect on the subsequent in-court identification testimony because the State lost the original. All that we can examine is the black and white copy introduced as State's Exhibits 1, 2 and 10. We can not examine the paper that the different photographs were developed on to examine whether they were on different types or qualities of paper. We can not examine skin colors or the individual's eyes, hair or clothing. We can not prove anything about the original lineup because the State, who acknowledged to the trial court that it had possession of the original, lost it. When the State "lost" the original, it denied Appellant an opportunity to demonstrate suggestiveness which would have caused all in-court identification of Appellant to be ruled inadmissible. Furthermore, because we can not determine the suggestiveness of the photo lineup, we can not weigh the required factors [ ] to determine "the corrupting effect" of the suggestive pretrial identification procedure as required by the Texas Court of Criminal Appeals. *See Ibarra v. State*, 11 S.W.3d at 196. Nor can we

5

perform the test as to whether, considering the totality of the circumstances, "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" as required by the United States Supreme Court in *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Appellant can not do anything to determine suggestiveness because of the State's actions.

Defense counsel objected to the admission of the copy of the original photographic line-up. The error claimed in point one was preserved for appellate review, therefore, we overrule appellant's point of error two without further consideration.

The admission of copies of photographs used in photographic line-ups rather than the original photographs has been considered and held not to be reversible error. *See Van Byrd v. State*, 605 S.W.2d 265, 270 (Tex. Crim. App. 1980); *Davis v. State*, 649 S.W.2d 380, 382 (Tex. App.—Fort Worth 1983, pet. ref'd). Furthermore, "[w]hen the identification testimony is of independent origin apart from any pretrial identification procedure, the State's inability to produce a set of photographs has no adverse effect on the admissibility of the identification testimony." *Love v. State*, 730 S.W.2d 385, 395 (Tex. App.—Fort Worth 1987, no pet.).

If the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed reliable, "reliability [being] the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999); *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988); *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983); *Loving v. State*, 947 S.W.2d 615, 617 (Tex. App.—Austin 1997, no pet.).

Felsing, who filled in the stolen check with appellant's name as payee and forged Schorn's name as the maker of the check, testified that he saw appellant enter the bank to cash the check and saw him come out of the bank and get in a truck. Immediately thereafter, appellant, Felsing, and four other men in three trucks went to Landa Park. In Landa Park, the proceeds of the check were divided among the six men. Felsing, who had not seen the photographic line-up, made an in-court identification of appellant.

Following the bank's procedure, the bank teller, Amerson, verified the identity of the man for whom he cashed the check. Without a trial objection, Amerson identified appellant as the man who cashed the check.

Rutledge, Amerson's supervisor, did not see the man who cashed the check. However, when Amerson showed Rutledge the driver's license, she compared the signature on the driver's license with the signature on the check, believing the signatures to be the same, Rutledge instructed Amerson to cash the check. Later, Rutledge identified appellant's photograph in the photographic line-up as the same man whose photograph she had seen on the driver's license Amerson had shown her.

The handwriting identification expert compared the endorsement signature on the check with the known signature of appellant. The expert expressed the opinion that appellant endorsed the check.

Appellant specifically complains that because of the loss of the original photographic line-up and the admission of a copy of the line-up, he did not have an opportunity to demonstrate that the photographic line-up may have been impermissibly suggestive.

However, even if appellant could have shown that the photographic line-up was suggestive, the totality of the circumstances reveals no substantial likelihood that appellant was misidentified. Appellant's first point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Justices Jones, Kidd and Dally[*]

Affirmed

Filed:   September 14, 2000

Do Not Publish

---

[*]   Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).