In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00046-CR


______________________________




LIDGE HENRY TIDWELL, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Cass County, Texas


Trial Court No. 2006F00109




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A Cass County jury found Lidge Henry Tidwell, Jr., guilty of driving while intoxicated,
subsequent offense. This offense was enhanced to a second-degree felony for which the jury
assessed punishment at five years' confinement. Tidwell now appeals his conviction, alleging three
points of error: (1) that the evidence is legally and factually insufficient to support the jury's verdict,
(2) that the trial court erred by submitting an Allen charge (1) to the jury under the circumstances at
trial, and (3) that the trial court erred by denying Tidwell's motion for mistrial based on the deadlock
of the jury.

I. FACTUAL BACKGROUND

 A. State's Case

 At approximately 1:00 a.m. on April 1, 2006, Officer Joshua Mason stopped a sports utility
vehicle (SUV) for speeding on State Highway 77. At the time he was stopped, Tidwell had six
children (2) and one adult as passengers. Tidwell pulled over his vehicle, and, as Mason instructed,
exited the vehicle, initially wrongly identifying himself as "Lannie David Tidwell." According to
Mason, he could smell "a very, very noticeable" odor of alcohol coming from Tidwell. 

 Mason noted that Tidwell had a visible "object" on one of his eyes, but explained that
Tidwell otherwise qualified as a candidate for a horizontal gaze nystagmus (HGN) test. (3) In
performing the HGN test, Tidwell exhibited all six of the possible clues which would suggest
intoxication. Mason then administered the walk-and-turn test, which Tidwell also performed poorly;
during the test, he stopped while he was walking, missed a heel-to-toe maneuver, and stepped out
of line. Tidwell also performed the one-legged-stand test, during which he swayed and hopped,
indicators during that test that he was intoxicated. Mason also noticed that Tidwell's speech was
slurred and that his face was flushed and perspiring. Using the field sobriety test results, the odor
of alcohol, the speech patterns, and general demeanor and appearance of Tidwell, Mason concluded
that Tidwell was intoxicated. Tidwell refused to provide a breath specimen. 

 Although Tidwell denied having any alcohol in the vehicle, Tidwell's wife, Crystal
Obenoskey, found a nearly empty bottle of whiskey in the vehicle and alerted Mason to the bottle.
After he was arrested, Tidwell did reveal to Mason his real name. Mason testified that Tidwell
explained that he initially provided a false name because he did not have a driver's license. 

 B. Tidwell's Case

 Obenoskey testified that Tidwell consumed one whiskey and cola drink on March 31, at
about 6:30 p.m., and that he had then gone to sleep that night at 7:30 p.m. At 9:30 p.m., Tidwell's
niece called him and asked him to pick her up near Talco. Tidwell arose from bed and he and his
family left their house to retrieve the niece. Obenoskey testified that Tidwell had not consumed any
more alcohol since the one drink earlier that evening. She explained that the nearly-empty whiskey
bottle in the vehicle belonged to her mother, the owner of the SUV Tidwell was driving. Tidwell's
niece, Tialena James, was also a passenger in Tidwell's vehicle when he was stopped by Mason. She
testified that Tidwell had picked her up at 11:30 that night and that Tidwell did not appear to be
intoxicated. 

 Tidwell testified in his own defense that he had consumed one weak "toddy" at
approximately 6:30 p.m. on March 31. He went on to say that he had gone to bed at approximately
7:00 p.m. and left for Talco to pick up a relative at approximately 9:30 p.m. Tidwell testified further
that he had a ninth-grade education and had been in speech and special education classes when in
school. He did not testify about having any problem with his eyes. 

 C. The Jury's Deliberation and Verdict

 The jury retired at 2:26 p.m. on February 28, 2007, to deliberate. The trial court inquired at
5:15 p.m. as to whether the jury had arrived at a verdict and when the jury indicated it had not, the
trial court recessed the jury until the following morning. The next day, the jury resumed its
deliberations at 8:45 a.m. Ten minutes later, the jury sent the trial court a note which stated, "We
are not able to reach a verdict." 

 Over defense counsel's objection, the trial court then brought the jury into the courtroom and
gave it the following oral instruction:

 Members of the jury, I have your note that you are deadlocked. In the interest
of justice, if you could end this litigation by your verdict, you should do so. I do not
mean to say that any individual juror should yield her own conscience and positive
conviction. But I do mean that when you are in the jury room, you should discuss
this matter carefully, listen to each other and try, if you can, to reach a conclusion on
the verdict.


 It is your duty as a juror to keep your mind open and free to every reasonable
argument that may be presented by your fellow jurors so that this jury may arrive at
a verdict that justly answers the consciences of the individuals making up this jury.


 You should not have any pride of opinion and should avoid hastily forming
or expressing an opinion. At the same time, you should not surrender any
conscientious views founded on the evidence unless convinced of your error by your
fellow jurors.


 If you fail to reach a verdict, this case may have to be tried before another
jury, then all of our time will have been wasted. Accordingly, I return you to your
deliberations.


The jury returned to its deliberations at 9:12 a.m. and returned its verdict of guilty at 10:13 a.m.

II. SUFFICIENCY OF THE EVIDENCE

 Tidwell challenges the legal and factual sufficiency of the evidence to support the jury's
verdict.

 A. Standards of Review

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In reviewing the factual sufficiency of the evidence, we likewise view all the evidence, but
do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is
so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly
wrong or manifestly unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007);
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404,
414-15 (Tex. Crim. App. 2006). In a factual sufficiency review, we are to afford "due deference"
to a jury's determinations. Marshall, 210 S.W.3d at 625.

 B. Elements of the Offense

 A person commits an offense if he is intoxicated while operating a motor vehicle in a public
place. Tex. Penal Code Ann. § 49.04 (Vernon 2003). Tidwell's contention focuses on the
evidence to support the finding that he was intoxicated. We will, therefore, examine the evidence
of intoxication, keeping in mind that the Texas Penal Code defines "intoxicated" as follows: 


 (A) not having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body; or


 (B) having an alcohol concentration of 0.08 or more.

Tex. Penal Code Ann. § 49.01(2) (Vernon 2003). 

 C. Discussion

 Field sobriety tests do not measure precise alcohol concentration but, instead, can serve as
circumstantial evidence "tending to show that he did not have normal use of his mental or physical
faculties at the time of the accident because of alcohol consumption." Douthitt v. State, 127 S.W.3d
327, 337 (Tex. App.--Austin 2004, no pet.); see also Emerson v. State, 880 S.W.2d 759, 769 (Tex.
Crim. App. 1994) (HGN test is reliable indicator of intoxication but it cannot be used to quantify test
subject's blood-alcohol content).

 Here, Mason testified that Tidwell's performance on the walk-and-turn test and the one-legged-stand test suggested to Mason that Tidwell did not possess the normal use of his faculties. 
In addition to Mason's testimony regarding the field sobriety tests, the record also reveals that Mason
smelled a very noticeable odor of alcohol on Tidwell and that Mason also noted that Tidwell was
flushed and perspiring. Mason also testified that Tidwell's speech was slurred. Based on Mason's
visual and olfactory observations of Tidwell and the results of Tidwell's field sobriety tests, Mason
concluded that Tidwell was "definitely intoxicated." The evidence is legally sufficient to allow a
rational trier of fact to have found beyond a reasonable doubt that Tidwell was intoxicated and, thus,
the evidence was sufficient to support the jury's verdict. 

 Tidwell and Obenoskey both testified that he had consumed only one drink approximately
six hours prior to the traffic stop. Tidwell also presented evidence that he had speech classes (the
need for speech classes would be some evidence that Tidwell experienced speech difficulties), a fact
which could tend to undermine Mason's observation that Tidwell's speech lent a suggestion that he
was intoxicated. Tidwell also offered some evidence that would call into question the result of the
HGN test. On cross-examination, Mason testified that when four of six clues are observed, seventy-eight percent of the time that person has a blood-alcohol content above .10. Further, Mason
conceded that he had observed a noticeable defect of some variety on Tidwell's eye prior to the
administration of the HGN test. There is evidence that at the time of the roadside stop, Tidwell was
wearing the same jacket that he had been wearing when he had consumed alcohol earlier in the
evening. (Tidwell seems to suggest that his wearing of that same jacket may have accounted for the
odor of alcohol.) While the record does reveal some evidence that would weigh against the finding
that Tidwell was intoxicated at the time, the evidence that he was intoxicated was not so weak or so
outweighed by the preponderance of the evidence that the jury's verdict was manifestly unjust. See
Roberts, 220 S.W.3d at 524. Therefore, the evidence was factually sufficient to support the verdict.

III. ALLEN CHARGE TO THE JURY

 At trial, Tidwell raised an objection when the trial court indicated that it intended to give an
Allen charge to the jury in response to the jury's note indicating that it was deadlocked:

 Your Honor, I've reviewed it. I do object to it based on the jury has reached a
decision that they are deadlocked and that decision of theirs should be granted.


On appeal, Tidwell contends the trial court erred by giving an Allen charge in response to the jury's
note and, even if properly given, the Allen charge as given was coercive in nature. We address these
contentions in turn.

 A. Improper to Give Allen Charge in Response to Jury's Note

 Tidwell contends that the note from the jury indicating that it was unable to reach a verdict
was not a request for further instruction that would prompt the administration of an Allen charge. (4) 
In support of this position, he cites Jackson v. State, 753 S.W.2d 706, 712 (Tex. App.--San Antonio
1988, pet. ref'd). He also discusses Arrevalo v. State, 489 S.W.2d 569 (Tex. Crim. App. 1973),
distinguishing the jury's note and request for instruction in Arrevalo from the note in the instant case
in which, he argues, the jury made no request for further instruction. He contends the trial court
should have declared a mistrial rather than having given the jury an Allen charge.

 The jury note in Jackson, like the one here, did not make an express request for further
instruction. See Jackson, 753 S.W.2d at 712. Instead, the jury note was described as simply "stating
that the jury was unable to reach a unanimous verdict following four hours of deliberation." Id. The
Jackson court observed that, absent a specific request for additional instruction, the trial court was
without the authority under Article 36.16 to communicate with the jury. See Tex. Code Crim. Proc.
Ann. art. 36.16 (Vernon 2006). (5) Ultimately, however, the Jackson court concluded that any error
associated with the violation of Article 36.16 was not preserved by defense counsel's trial objection
to the substance of the Allen charge.

 Similarly, Tidwell did not raise this issue in terms of Article 36.16 before the trial court or
before this Court. Since the precise issue was not before the Jackson court and because Tidwell also
failed to raise this issue, we do not read Jackson as persuasive authority to support Tidwell's position
that a jury note must specifically ask for further direction as the necessary predicate to the issuance
of an Allen charge to a deadlocked jury. See Bledsoe v. State, 21 S.W.3d 615, 622 n.2 (Tex.
App.--Tyler 2000, no pet.). We look for other authority on the issue. 

 In Arrevalo, the jury note did ask "What do we do?" after it revealed it was deadlocked. 
Arrevalo, 489 S.W.2d at 571. However, we find no authority that would support the requirement
that a jury note must expressly seek additional instructions before the trial court could properly give
an Allen charge. (6) A note such as the one before us in which the jury simply declares that it is
deadlocked is sufficient to permit the trial court to issue a proper Allen charge when, of course, all
other circumstances are appropriate for doing so. A note from a jury need not expressly seek
additional instruction in order for the trial court to give an Allen charge.

 In fact, there is some authority supporting the conclusion that a trial court does not err by
giving an Allen charge even before a jury has unequivocally indicated that it is deadlocked. For
instance, in Loving v. State, 947 S.W.2d 615, 619 (Tex. App.--Austin 1997, no pet.), the jury had
deliberated almost five hours and had not indicated it was deadlocked in reaching a verdict when it
requested that certain testimony be read by the court reporter. The trial court, on its own initiative,
then submitted an Allen charge. Id. The court of appeals held this was not error. Id. at 620; see also
Love v. State, 909 S.W.2d 930, 936 (Tex. App.--El Paso 1995, pet. ref'd) (the trial court followed
a practice "quite preferred in some states and federal jurisdictions" of including within the original
instructions an Allen charge which is submitted to the jury prior to deliberation).

 Further, the decision regarding whether to require a jury to continue deliberating lies within
the discretion of the trial court. See Tex. Code Crim. Proc. Ann. art. 36.31; Guidry v. State,
9 S.W.3d 133, 155 (Tex. Crim. App. 1999); Howard, 941 S.W.2d at 121; DeLuna v. State, 711
S.W.2d 44, 48 (Tex. Crim. App. 1986). The trial court is not obligated to declare a mistrial at the
first sign of jury impasse. See Howard, 941 S.W.2d at 121. Reversal is mandated only if the record
reveals that the trial court abused its discretion by holding the jury for deliberations. Jackson v.
State, 17 S.W.3d 664, 676 (Tex. Crim. App. 2000). We conclude that in this case, the trial court did
not abuse its discretion when it gave the Allen charge in response to the jury's note indicating that
it was deadlocked after about three hours of deliberation. We overrule Tidwell's contention to the
contrary.

 B. Substance of Charge

 Tidwell also complains on appeal that the Allen charge as given was coercive and failed to
meet the substantive requirements of a proper Allen charge. These contentions do not comport with
Tidwell's objection at trial. We, therefore, find they are not preserved for our review. See Tex. R.
App. P. 33.1(a); Garza v. State, 55 S.W.3d 74, 77 (Tex. App.--Corpus Christi 2001, pet. ref'd);
Loving, 947 S.W.2d at 619.

 Even if the alleged error would have been preserved, we note that the primary inquiry to
determine the propriety of an Allen charge is its coercive effect on juror deliberation "in its context
and under all the circumstances." Lowenfield v. Phelps, 484 U.S. 231, 237 (1988); see also Howard,
941 S.W.2d at 123. An Allen charge is unduly coercive and, therefore, improper if it pressures jurors
into reaching a particular verdict or if it improperly conveys the court's opinion of the case. See
Arrevalo, 489 S.W.2d at 571. The United States Supreme Court in Lowenfield and the Texas Court
of Criminal Appeals in Howard each addressed the issue of Allen charges when, as here, the Allen
charges did not focus direction toward jurors maintaining the minority viewpoint.

 In Lowenfield, the United States Supreme Court reaffirmed its reasoning in Allen and
commented that the principles underlying Allen "are beyond dispute, and they apply with even
greater force in a case such as this, where the charge given, in contrast to the so-called 'traditional
Allen charge,' does not speak specifically to the minority jurors." Lowenfield, 484 U.S. at 237-38. 
In Howard, although the trial court was aware of the numerical division when it gave a supplemental
Allen charge, it "did not directly address the minority jurors and did not shade the instruction with
coercive nuance." Howard, 941 S.W.2d at 124. Thus, in context, the Allen charge given in Howard
was not coercive. Id. A supplemental charge which suggests that all jurors reevaluate their opinions
in the face of disparate viewpoints cannot be said to be coercive on its face. Id. at 123. 

 We also have reviewed our decision in Freeman v. State, 115 S.W.3d 183 (Tex.
App.--Texarkana 2003, pet. ref'd), in which we reviewed an Allen charge virtually identical to the
one given in the instant case. We observe that the Allen charge in this case, as the one in Freeman,
addressed the jury generally and did not direct any instruction to the jurors in the minority. Id. at
187. We further note that the Allen charge given in the instant case and in the Freeman case issued
several reminders that jurors should not abandon their own consciences.

IV. DENIAL OF MOTION FOR MISTRIAL

 More consistent with his trial objection, Tidwell contends the trial court should have granted
a mistrial when it learned that the jury believed itself to be deadlocked. We review the trial court's
denial of a motion for mistrial for an abuse of discretion. See Ladd v. State, 3 S.W.3d 547, 567 (Tex.
Crim. App. 1999); Freeman, 115 S.W.3d at 186. A trial court abuses its discretion when it acts
without reference to any guiding rules and principles. See Montgomery v. State, 810 S.W.2d 372,
380 (Tex. Crim. App. 1990). Having concluded that the trial court properly gave the jury an Allen
charge when the jury indicated by note that it was deadlocked, we conclude that the trial court did
not act without reference to guiding principles. Again, we point out that the trial court is not bound
to declare mistrial at the first sign of jury impasse. Howard, 941 S.W.2d at 121. The trial court did
not abuse its discretion when it denied Tidwell's motion for mistrial urged when the jury stated it was
at an impasse and, instead, instructed the jury in accordance with well-established law concerning
the supplemental Allen charge. We overrule Tidwell's contention.

V. CONCLUSION

 Having concluded that legally and factually sufficient evidence supports the jury's verdict and
that the trial court did not abuse its discretion when it denied Tidwell's motion for mistrial and,
instead, instructed the jury to continue its deliberations, we overrule Tidwell's contentions on appeal.

 We affirm the trial court's judgment.




 Bailey C. Moseley

 Justice


Date Submitted: August 8, 2007

Date Decided: October 10, 2007


Do Not Publish

1. An Allen charge takes its name from Allen v. United States, 164 U.S. 492, 501 (1896), and
describes a supplemental charge sometimes given to a jury that declares itself deadlocked. It reminds
the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and
there is no guarantee that a second jury would find the issue any easier to resolve. See id.; Barnett
v. State, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006). The use of an Allen charge has long
been sanctioned by both the United States Supreme Court and the Texas Court of Criminal Appeals. 
See Allen, 164 U.S. at 501-02; Arrevalo v. State, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973).
2. Mason testified that there were seven children in the vehicle. 
3. Before Mason began the HGN test, he checked whether Tidwell's pupils were of equal size
and also checked for equal tracking. Based on his observations, Mason concluded that Tidwell was
a proper candidate for the HGN test. 
4. Tidwell also contends that the trial court's noncompliance with Article 36.27 constitutes
reversible error. He does not further develop this argument and cites to no authority or specific
subsection of Article 36.27 that would direct this Court to the substance of his argument concerning
Article 36.27. We decline to address this contention. See Tex. R. App. P. 38.1(h); Garcia v. State,
887 S.W.2d 862, 871 (Tex. Crim. App. 1994).
5. Article 36.16 provides in pertinent part that, "[a]fter the argument begins no further charge
shall be given to the jury unless required by the improper argument of counsel or the request of the
jury." Tex. Code Crim. Proc. Ann. art. 36.16.
6. To the contrary, we have found a number of cases which describe the jury note without
reference to whether the jury specifically sought further instruction. Although addressing the issue
in terms of a variety of arguments, the following cases demonstrate the common context in which
a trial court issues an Allen charge: Howard v. State, 941 S.W.2d 102, 121 (Tex. Crim. App. 1996)
(jury note that "indicated that it had been deadlocked most of the day"); Edwards v. State, 558
S.W.2d 452, 452 (Tex. Crim. App. 1977) (jury note stating "We are hung"); Taylor v. State, 173
S.W.3d 851, 854 (Tex. App.--Texarkana 2005, no pet.) (jury note stating the jury was split 11-1 for
guilty and that the one voting not guilty "has a personal attachment with the neighborhood and one
of the witnesses" and that "the juror would not [sic] longer deliberate with the majority of the jury");
Husain v. State, 161 S.W.3d 642, 646 (Tex. App.--San Antonio 2005, pet. ref'd) (jury note stating
that it "was deadlocked on the second count"); West v. State, 121 S.W.3d 95, 108 (Tex. App.--Fort
Worth 2003, pet. ref'd) (jury notes that indicated that it was "unable to reach a verdict" and it was
split "11 to 1"); Bledsoe, 21 S.W.3d at 622 (jury note stating that it was "hung on a decision"); Jones
v. State, 986 S.W.2d 358, 362 (Tex. App.--Beaumont 1999, pet. ref'd) (jury note stating that it was
"hung"); Davis v. State, 709 S.W.2d 288, 290 (Tex. App.--Corpus Christi 1986, pet. ref'd) (a second
note from jury stating that it remained unable to reach a unanimous verdict); Simpson v. State, 668
S.W.2d 915, 918 (Tex. App.--Houston [1st Dist.] 1984, no pet.) (jury note stating that it "finds it
impossible to reach a decision at this time"); Ray v. State, 649 S.W.2d 142, 146 (Tex. App.--Fort
Worth 1983, pet. ref'd) (jury note "stating that the jury was deadlocked eleven to one"). It is
important to note that the majority of the cases on this issue do not make the distinction between a
note that simply declares that the jury is deadlocked and a note that declares the jury is deadlocked
and specifically seeks additional instructions from the trial court.