**Charmayne RUSHING, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–02–00120–CR.

Court of Appeals of Texas,
El Paso.

July 1, 2004.

---

J. Devin Alsup, Midland, for Appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Midland, for State.

Before Panel No. 1, LARSEN, McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

Charmayne Rushing appeals her theft by repetition conviction. A jury found her guilty and she was sentenced by the trial court to 12 year's imprisonment. On appeal, Appellant challenges the legal and factual sufficiency of the evidence supporting her conviction. We affirm.

The evidence in this case is as follows. Appellant, with her husband, Michael Lewis, entered a Wal–Mart store in Midland, Texas. Richard Baze, a Wal–Mart security employee, saw them with a cart holding open Wal–Mart bags which contained merchandise. He found this suspicious and he began tailing them. He saw them select men's packaged thermal underwear and under-shirts from store shelves and place them in the cart alongside the Wal–Mart bags. Then minutes later, in another section of the store, he saw them surreptitiously place those same items into the Wal–Mart bags with the other merchandise. The couple then pushed their cart up to the front of the store, past closed check-out registers and up to the service desk. Appellant took out two bags leaving one or more bags in the cart. Mr. Baze could not hear any conversations but it appeared to him that they tried to get a refund or exchange on some of the merchandise they had in the two Wal–Mart bags.

The evidence about what happened next is unclear. According to Mr. Baze, after the exchange was refused, Appellant and Mr. Lewis left some men's pants at the service desk and started to leave the store with several bags in the cart. They went out through the first set of doors but stopped to talk in the vestibule. Mr. Baze, still tailing them, walked past them unnoticed and once outside, turned to watch and wait for Appellant and Mr. Lewis to exit the store. Mr. Lewis, empty handed, left the store and walked out into the parking lot; Appellant, however, went back into the store, took one bag out of the cart, and put it on the floor near where the door greeter stands. Mr. Baze believed that she did this because she had seen uniformed Wal–Mart employees, whom he had radioed, rushing towards her. After setting down the bag, Appellant turned, and still pushing a cart with bags in it, went back through the first set of doors into the vestibule where Mr. Baze detained her.

Mr. Baze's testimony at trial was that property unlawfully appropriated was in Wal–Mart bags in the cart that Appellant was pushing when he detained her. He testified that he made a display of those items, photographed them, and then annotated the photograph as "Evidence from Theft." This photograph was admitted as State's Exhibit No. 2. The photograph depicts eleven assorted packages of men's underwear. Mr. Baze additionally testified that he took a photograph of the merchandise that was in the bag that Appellant placed on the floor by where the door greeter normally stands. This photograph, admitted as State's Exhibit No. 1, displays four packages of mens' underwear and a dark colored jacket. Mr. Baze adamantly testified that the items in State's Exhibit No. 1, along with three pairs of pants, which he did not photograph, were the items that Appellant and Mr. Lewis had brought into the store and had tried to

exchange. He also testified that there were pink stickers on the three pair of pants, indicating that the pants had been checked in by the door checker for refund or exchange.

Though never challenged or queried, Mr. Baze's written statement, State's Exhibit No. 11 provides a distinctly different account of the Appellant's actions after her request for an exchange was rejected. In pertinent part, Mr. Baze's statement reads:

> THEY THEN PROCEEDED TOWARDS THE FRONT AND CUT THROUGH A CLOSED REGISTER AND TO THE SERVICE DESK WHERE SHE SAID SHE WANTED TO MAKE AN EXCHANGE. THE EXCHANGE WAS DENIED AND THEY PROCEEDED TO THE NORTH–EAST MAIN EXIT. THERE, MS. RUSHING AND MR. LEWIS SAID SOMETHING TO EACH OTHER AND HE TURNED AROUND AT THE DOOR AND CONTINUED OUT. MS. RUSHING PUSHED THE MERCHANDISE OUT THE FIRST SET OF DOORS WHEN SHE REALIZED SOME MANAGEMENT WHERE [sic] PROCEEDING TO THE DOORS QUICKLY. SHE TURNED AROUND AND PUSHED THE BASKET BACK IN AND REMOVED THE BAG THAT SHE BROUGHT IN WITH HER AND PROCEEDED OUT THE DOOR AGAIN. SHE THEN STOPPED AND PROCEEDED BACK IN AS SHE SAW ME APPROACH HER.

Hilario Esparza who was working at the Service Desk that day, remembered a couple who attempted to exchange three pair of pants without a receipt and that the automated register system would not approve the exchange. According to Mr. Esparza, Appellant wanted to exchange three pair of pants for the thermal underwear and under-shirts shown in State's Exhibit No. 1.

As for the merchandise displayed in State's Exhibit No. 2, Mr. Esparza testified that he never saw those items. His contemporaneous written statement, which was not critically reviewed by Appellant's lawyer but was admitted as State's Exhibit No. 10, reads:

> 2 customers (a lady & man) come to service desk to exchange 3 mens pants. They set 2 A-shirt packages, 2 packages of thermal draws. Ran the refund through register & entered driver licence. Refund was denied. They then grabbed their pants to take with them, and threw a black leather jacket on top of the shirts & draws. Left the shirts, draws, & jacket at service desk. When they left they had several wal-mart bags full of clothing (thermals?). They left the Service Desk.

In comparing Mr. Baze's and Mr. Esparza's testimony, we, like the jury [1], are left wondering what was in the cart or the basket. We think it's clear that contrary to Mr. Baze's testimony, the items in State's Exhibit No. 1 were left with Hilario Esparza at the Service Desk.

Appellant testified that she was trying to exchange six pairs of pants which had been marked with pink stickers as proof that she had brought them into the store. Upset because her request to exchange the pants for the underwear was rejected, she and Mr. Lewis left the service desk; just before walking out the first set of doors to leave the store, Appellant pulled her pants out of the cart and simply left the un-

---

1. The jury during its deliberation sent a note to the trial court asking "What was exactly in the basket when she was stopped?"

purchased merchandise in the cart. On cross-examination, she was forced to admit a litany of previous theft convictions.

Mr. Lewis' testimony was also offered at trial. On direct examination, he essentially corroborated Appellant's account, but on cross-examination, he had to admit that he had plead guilty to the very same theft. He claimed however, that the only reason that he plead guilty was to be released from the county jail in order to start serving another state jail sentence.

### Standard of Review

■ In reviewing the legal sufficiency of the evidence, we must review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim. App.1997). Our duty is not to reexamine the evidence and impose our own judgment as to whether the evidence establishes guilt beyond a reasonable doubt. *See Lyon v. State*, 885 S.W.2d 506, 516–17 (Tex.App.-El Paso 1994, pet. ref'd). Instead, our duty is to determine whether if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 421–22 (Tex.Crim. App.1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *See Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

■ In reviewing a factual sufficiency of the evidence challenge, we consider all of the evidence in a neutral light, both for

and against the verdict, to determine whether it demonstrates that the proof of guilt is so obviously weak as to undermine out confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). In conducting a factual sufficiency review, the reviewing court cannot substitute its conclusions for those of the jury. *See Davila v. State*, 930 S.W.2d 641, 647 (Tex. App.-El Paso 1996, pet. ref'd). Our review must employ appropriate deference and should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any evidence presented at trial. *Johnson*, 23 S.W.3d at 7; *Clewis*, 922 S.W.2d at 134. A jury's verdict is not manifestly unjust merely because the fact finder resolved conflicting views of the evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App.1997).

### Discussion

The indictment in this case alleged that Appellant unlawfully appropriated the property by deception. Tex.Pen.Code Ann. § 31.03(a)(Vernon Supp.2004) provides that a person commits the offense of theft if "he unlawfully appropriates property with intent to deprive the owner of property." Under the Texas Penal Code Section 31.03(b), "[a]ppropriation of property is unlawful if: (1) it is without the owner's effective consent . . . ." See Tex. Pen.Code Ann. § 31.03(b)(1). Consent is not effective if it is induced by deception and the kind of deception involved in this case is defined as "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be

true." Tex.Pen.Code Ann. § 31.01(1)(A), (3)(A).

The State concedes that the jury charge here is faulty because it fails to mention or define deception. *See MacDougall v. State,* 702 S.W.2d 650, 652 (Tex.Crim.App. 1986). However, as noted earlier, sufficiency of the evidence is to be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik,* 953 S.W.2d at 239–40. We reject, however, the State's suggestion that a hypothetically correct jury charge in this case would be:

> Was the evidence sufficient to show that any consent given by the store for Appellant to put the merchandise in the cart was given pursuant to the false impression given by Appellant's actions that she would eventually pay for the merchandise?

We find that patently over broad, which could lead to absurd results. Instead, we believe a correct application charge would more properly be:

> Was the evidence sufficient to show that at the time of the appropriation the Appellant acquired it by means of deception with the intent to deprive the owner of such property?

And then applying Section 31.01(4)(A), which states deception is defined to mean "creating or confirming by words or conduct a false impression of law or fact this is likely to affect the judgment of another in the transaction, and that the [defendant] does not believe to be true."

■ Consequently, the offense of theft by deception does not occur if the alleged victim hands over property or consents to the defendant taking possession knowing that the defendant's representations are not true. *See Swope v. State,* 723 S.W.2d 216, 223 (Tex.App.-Austin 1986), *affd,* 805 S.W.2d 442 (Tex.Crim.App.1991). In other words, an essential element of theft by deception is that the victim relied and acted upon the deception. *See id.*

Mr. Baze, the loss protection employee, saw Appellant take thermal underwear and other items and place them in her cart. Later, he saw Appellant put those same items, in a suspicious manner, into an opened Wal–Mart bag which had other items that he assumed that she had brought into the store. Both sides concede that at this point, Appellant has appropriated the property. In simple theft, as the State notes, appropriate is more akin to possession of property than to transfer of property. *See Baker v. State,* 511 S.W.2d 272, 273 (Tex.Crim.App.1974). The State argues that the evidence is sufficient because the owner's consent for Appellant to put goods into a cart was ineffective because it was induced by the deception of Appellant that she would eventually pay for goods. We find no merit in that argument. The commercial realities of retail merchandising is the reason that customers have the store owners consent to remove items from the shelves. That consent is not induced by the deception, and when Mr. Baze saw Appellant take the goods from the shelves and put them in her cart or even when she put them in the bags, there has been no transaction or transfer. Indeed, Mr. Baze stated that he did not believe that the theft had taken place at the point.

As evidenced by the jury's question during their deliberations, they had doubt as to what Appellant actually had in her cart when she was detained by Mr. Baze. We think the evidence clearly shows that she only had the pants that she initially brought into the store to exchange. Mr. Esparza, the Service Desk attendant, was unequivocal that the items depicted in State's Exhibit No. 1, and annotated as "exchange" items, were left with him at the Service Desk, and not, as Mr. Baze

testified, placed by Appellant on the floor near the door greeter. That could only mean that the bag that contained the items that Mr. Baze saw Appellant put in the bag, as shown in State's Exhibit No. 2, were in the bag that Appellant either put on the floor by the door greeter according as Mr. Baze's account suggests, or were left in the cart and abandoned in the store as suggested by Appellant's testimony.

But, where the bags were and which items were in which bags when Appellant was detained is irrelevant because the transaction necessary for a theft by deception had already taken place. That transaction occurred when Mr. Esparza refused to exchange the pants for the thermal underwear and Appellant and her husband stormed off with their pants and another bag of thermal underwear. We believe the evidence is legally and factually sufficient for a jury to find that Appellant attempt to exchange clothing was a blind to theft of another set of similar goods concealed in another bag. Though Appellant testified that the bag containing the articles shown in State's Exhibit No. 2, and for which she was charged, were left in a cart inside the store just before she tried to leave, the deception had already occurred and the theft completed. We conclude that the evidence is both legally and factually sufficient to sustain the jury's verdict of guilty and overrule both of Appellant's issues.

The judgment of the trial court is affirmed.