COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| OMAR VENEGAS-ORTIZ, | | No. 08-08-00063-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | Criminal District Court No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20060D04972) |
| | § | |
| | § | |

## **O P I N I O N**

Appellant was convicted by a jury of the offense of possession, of a controlled substance, 400 grams or more, with intent to deliver. He was sentenced to 58 years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. On appeal, he raises four issues, challenging the sufficiency of the evidence, the trial court's denial of his motion to suppress, and several aspects of the court's charge to the jury. We affirm.

On October 9, 2006, Detective Jose Lucero, and several other members of the El Paso Police Department's drug interdiction, DEA task force, approached a residence at 7448 Le Conte in El Paso. Appellant was living at the house with a woman named, Frida Gonzalez. At approximately 11:15 a.m., Detective Lucero witnessed Appellant drive away from the house in a white Ford Ranger. The detective followed Appellant to the parking lot of a nearby fitness center, where Appellant left the Ford Ranger and entered a four-door Mercury sedan. Appellant then exited the sedan and proceeded into the gym, where he remained for approximately ninety minutes. When he initially came out of the gym, Appellant went to the Ford Ranger. However,

Appellant than left the truck and drove away in the Mercury sedan.

Detective Lucero followed Appellant back to the Le Conte house where he and the other task force members conducted a "knock and talk" with Appellant. Detective Lucero and his partner, Detective Sosa, identified themselves to Appellant, informed Appellant that the house was the subject of a narcotics investigation, and asked Appellant for permission to search the premises.[1] Shortly thereafter, the team's K-9 unit alerted to a trash bag and a gun safe located in the garage. Although Appellant continuously denied ownership of the safe, further investigation demonstrated that the safe had been purchased by Appellant at an El Paso Sam's Club through a membership account in Appellant's name. Upon opening the safe, the detective's found approximately 129 bundles of cocaine. Based on the quantity of cocaine recovered, and the way the bundles were packaged, the detectives determined Appellant was involved in distribution of narcotics.

During the search, although the house was sparsely furnished, the detectives found numerous items associated with packaging and distributing narcotics, such as cellophane, heat-seal wrapping, a food saver machine, and other packaging materials.[2] The police also found a ledger on a stand next to the bed in the master bedroom. The notations in the ledger corresponded with an agenda binder also discovered in the house, and the officers concluded these items were used to track the amount of cocaine being sold, and to calculate payments and

---

[1] There were a total of six officers involved in the investigation at the Le Conte house: Detective Lucero, Detective Sosa, Lieutenant Barragan, Sergeant Carrillo, Detective Arrieta, and Officer Lopez.

[2] Detective Lucero noted that the food saver machine had only been used to package narcotics. There was no indication that any of the food in the house had been preserved with the machine.

profits. They also located a brown paper bag with the number "129" noted on it, which corresponded with the number of bundles discovered in the gun safe.

Appellant was convicted of possession of a controlled substance, four hundred grams or more, with intent to deliver on January 17, 2008. On appeal, he raises four issues for review. In Issue One, Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. In Issue Two, Appellant contends the trial court erred by denying his motion to suppress. In Issues Three and Four, Appellant argues the trial court erroneously charged the jury by including an improper "Allen" charge prior to deliberations, and by failing to include the elements of the charged offense in the court's written charge.

In Issue Two, Appellant contends that the trial court erred in overruling his motion to suppress the cocaine evidence. Appellant's arguments under Issue Two are focused on the cocaine discovered inside the gun safe. He argues that the officers violated his Fourth Amendment rights by opening and searching the gun safe without a warrant. However, before we address Appellant's Fourth Amendment rights regarding the officers' search of the safe, we must first address whether Appellant has standing to raise the issue at all.

The basis of all assertions of Fourth Amendment protection is proof of a "reasonable expectation of privacy." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex.Crim.App. 2004). A defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Id*. He must prove that he was a victim of the unlawful search or seizure. *Kothe*, 152 S.W.3d at 59. An individual has no standing to complain about the invasion of someone else's personal rights. *Id.* A court may only consider whether a substantive Fourth Amendment violation has occurred,

after the complainant establishes his privacy interest. *Id*. An appellate court may raise a standing issue *sue sponte* on appeal. *Id*. at 60. Standing is a legal issue, which we review *de novo*. *Id*. at 59.

As we have previously stated, Appellant's Fourth Amendment claim is based on the police's search of the gun safe. However, at the suppression hearing there was substantial testimony that Appellant denied ownership of the safe, and he has continued to deny such ownership in post trial proceedings. During the suppression hearing, Detective Lucero testified that when the officers asked Appellant to open the safe Appellant responded that he did not know the combination. The detective then asked Appellant who the safe belonged to, and Appellant indicated that it belonged to another individual named Rogelio Acevedo. The detective instructed Appellant to call Mr. Acevedo to get the combination. Appellant dialed a number on his personal cell phone, and seemed to tell the person on the other end of the call that the police were at the house and wanted to know what was in the safe. Detective Lucero testified that the phone call lasted no more that five to ten seconds.

In a motion for new trial, apparently filed *pro se*, Appellant indicated that the narcotics belonged to a "Frida Castanon," who "was pleading hysterically with [him] after search and discovery of the contraband, to claim the contraband was his and not hers." Appellant also filed an affidavit attached to an amended motion for new trial in which he states in relevant part:

> I did not know there were any drugs where I was living with my girlfriend at the tome [sic] of our arrest. The house where we were arrested belongs to my girlfriend's aunt. I was not occupying or using the garage on my girlfriend and aunt's orders. I never knew what was in the safe and had no access to it.

Appellant presented no evidence at the suppression hearing to establish his standing to

contest the search of the safe. In fact, the only evidence attributable to Appellant on the issue of standing are his repeated denials of ownership and access. Because Appellant failed to establish that any injury to a privacy right which occurred via the officers' search of the safe was his, Appellant has failed to demonstrate his right to assert a motion to suppress in this instance. *See Luna v. State*, 268 S.W.3d 594, 603-04 (Tex.Crim.App. 2008). Therefore, without addressing the merits of the motion, we overrule Issue Two for lack of standing.

In Issue One, Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. In legal sufficiency review, we must consider all of the evidence in a light most favorable to the verdict, and determine whether a reasonable minded juror could have found the essential elements were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Roberts v. State*, 273 S.W.3d 322, 326 (Tex.Crim.App. 2008). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

In a factual sufficiency review, we consider all the evidence in a neutral light. *Grotti v. State*, 273 S.W.3d 273, 283 (Tex.Crim.App. 2008). The purpose of the review is to answer a single question: Considering all the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Grotti*, 273 S.W.3d at 283. Evidence is factually insufficient if: (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and

manifestly unjust. *Grotti*, 273 S.W.3d at 283. We cannot reverse a conviction under the "clearly wrong" or "manifestly unjust" standards simply because, based on the quantum of evidence admitted, we would have voted to acquit. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Nor can we declare that a conflict in the evidence justifies a new trial because we disagree with the jury's resolution of the conflict. *Id*. A new trial will only be granted when the reviewing court determines, on an objective basis, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. In addition, our review should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *see also Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006)(factual sufficiency review still requires "due deference" be given to the jury's determinations).

In a possession with intent to deliver case, the prosecution's burden of proof consists of three elements. *See King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995). State must prove beyond a reasonable doubt that the accused: (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *See* TEX.CODE CRIM.PROC.ANN. art. 38.03 (Vernon Supp. 2009); TEX.HEALTH & SAFETY CODE ANN. §§ 481.002(38), 481.112(a)(Vernon Supp. 2009). Appellant challenges the sufficiency of the evidence in support of the first elements of the offense.

Appellant argues that there is insufficient evidence to establish an affirmative link between himself and the cocaine found in the gun safe. In order to prove that the accused had knowledge of, and control over the contraband in cases where the accused is not in sole

possession of the location where the substance is found, there must be additional independent facts and circumstances which link the accused to the contraband. *See Evans v. State*, 202 S.W.3d 158, 161-62 (Tex.Crim.App. 2006). Whether direct or circumstantial, the evidence must establish the accused's connection with the contraband was more than just fortuitous. *Id*. at 161. While the accused's mere presence at the location where the drugs are found is insufficient to establish possession, presence, when combined with other "affirmative links" between the accused and the drugs, may well be sufficient to establish the element beyond a reasonable doubt. *Id*. at 162.

The key to this type of possession inquiry is the "logical force" with which the evidence supports an inference of conscious possession of contraband by the accused. *See id*. at 162; *Porter v. State*, 873 S.W.2d 729, 732 (Tex.App.--Dallas 1994, pet. ref'd). Texas courts have utilized a wide variety of factors to analyze the sufficiency of the evidence in support of the jury's affirmative finding of possession, including: (1) the defendant's presence at the location where a search warrant was executed; (2) whether the contraband was in plain view; (3) the defendant's proximity to and accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or drug paraphernalia when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was a residual odor of contraband; (10) whether the defendant owned or had the right to posses the place where the drugs were found; (11) whether the drugs were found in an enclosed area; (12) whether the accused was the operator of an automobile where contraband was found; (13) whether the defendant was found with a large

amount of cash or weapons at the time of his arrest; (14) whether the conduct of the accused indicated a consciousness of guilt; and (15) whether there was a significant amount of contraband seized. *See Evans*, 202 S.W.3d at 162 n.12; *Miramontes v. State*, 225 S.W.3d 132, 141-42 (Tex.App.--El Paso 2005, no pet.).

In this instance, the following evidence "links" Appellant to the cocaine: (1) Appellant was the lessee, and a resident of the Le Conte house; (2) the house was sparsely furnished, an indication, according to Detective Lucero, that the house was a drug stash house; (3) Appellant purchased the gun safe through his personal membership at Sam's club; (4) the gun safe was located in the garage of Appellant's house; (5) Appellant had convenient access to the safe; (6) the access code, as discovered by the officers in the safe's owner's manual, was readily accessible in the garage; (7) the presence of 129 bundles of cocaine in the safe, which according to the officers, indicated that there was a drug delivery and distribution operation going on at the residence; (8) the presence of wrapping and packaging materials in the residence such as trash bags, rolls of cellophane, heat-seal plastics, twine and evidence of left-over wrapping from bundles that had been opened on the premises; and (9) the presence of an accounting ledger, which Detective Sosa testified showed the amount of drugs being sold and the amount of money being taken in. In addition, as the fact finder and sole judge of credibility and weight to be given testimony, the jury was free to disregard Appellant's explanation to the officers that he did not own the safe and was unable to open it because he did not have the combination. *See Rushing v. State*, 141 S.W.3d 739, 742 (Tex.App.--El Paso 2004, no pet.), *citing Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997).

In sum, having reviewed the record in the light most favorable to the verdict, we conclude

that the evidence was legally sufficient to support the jury's determination that Appellant was in possession of the contraband. Likewise, having reviewed the record in a neutral light, the evidence is also factually sufficient to support the conviction. Issue One is also overruled.

Issues Three and Four challenge several aspects of the trial court's charge to the jury. However, as Appellant admits in his brief, neither of the alleged errors were objected to by his trial counsel. When potential error in a jury charge is not objected to at trial, the appellant must claim the error was "fundamental" and the reviewing court is limited to an "egregious harm" analysis. *See Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex.Crim.App. 2008). "Egregious harm" occurs when the error effectively denies the defendant his right to a fair and impartial trial. *See Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008). In determining whether such harm has occurred, the reviewing court should consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the final arguments of the parties; and (4) any other relevant information revealed by the record of the trial as a whole. *Id*.

In Issue Three, Appellant contends that the trial court erred by including a modified "Allen charge" as part of the instructions included in the charge at both the guilt/innocence and punishment phases of trial. The challenged instruction was included in both charges as follows:

Concerning your manner of deliberation:

A.    In order to return a verdict, each juror must agree thereto.

B.    Jurors have a duty to consult with one another to deliberate with a view of reaching an agreement, if it can be done, without violence to individual judgment.

C.    Each juror must decide the case for themselves, but only after an impartial

consideration of the evidence with their fellow jurors.

D.      In the course of deliberations, a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced it is erroneous.

E.      No juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of fellow jurors, or for the mere purpose of returning a verdict.

In this instance, Appellant argues that paragraphs D and E were premature, and constituted jury coercion. "Allen" type instructions are generally given in response to jury communications indicating deadlock. *See Jackson v. State*, 753 S.W.2d 706, 712 (Tex.App.--San Antonio 1988, pet. ref'd). To prevail on a complain that an Allen charge is coercive, an accused must demonstrate that jury coercion or misconduct likely occurred, or occurred in fact. *West v. State*, 121 S.W.3d 95, 108 (Tex.App.--Fort Worth 2003, pet. ref'd). An Allen charge is unduly coercive only if it pressured jurors into reaching a particular verdict, or improperly conveys the trial court's opinion of the case. *Id.* at 107-08.

Appellant cites to this Court's opinion in *Love v. State*, in which we discouraged the use of this type of instruction prior to the beginning of deliberations.[3] 909 S.W.2d 930, 936-37

---

[3] In *Love*, the subject of the appellant's challenge was the inclusion of an additional paragraph, (f), which stated:

> If the jury is unable to reach a verdict, it will be necessary for the Court to declare a mistrial and discharge the jury. The case will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled in the same way this jury has been empanelled, and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same as the questions confronting you and there is not [sic] hope that the next jury will find those questions any easier to decide than you have found them.

*Love*, 909 S.W.2d at 936. No such language appears in the jury charges in this case.

(Tex.App.--El Paso 1995, pet. ref'd)(noting that this type of instruction is "best suited for those situations in which the jury becomes deadlocked."). However, in the conclusion of *Love*, this Court determined the instruction given was non-coercive. *Id*. at 937. Therefore, while the Court discourages the pre-deliberation use of such an instruction, its inclusion in the charge did not constitute an abuse of discretion by the trial court. *Id*.

In the present case, the instruction was given as part of the court's main charge at both phases of trial. However, there is extensive authority in Texas approving of these types of instructions and holding that they are not coercive. *See Arrevalo v. State*, 489 S.W.2d 569, 571-72 (Tex.Crim.App. 1973); *Love*, 909 S.W.2d at 936-37. In addition, in this particular set of instructions, paragraphs A through C serve to further the non-coercive nature of the latter paragraphs. *See Love*, 909 S.W.2d at 936 n.6. Finally, there is no evidence, or indication from the record, that the instructions pressured the jurors to reach a particular decision, or communicated the trial court's opinion of the case. Therefore, the inclusion of the challenged instructions did not egregiously harm Appellant, and Issue Three is overruled.

In Issue Four, Appellant contends that the court's written charge to the jury, at the guilt-innocence phase of trial did not satisfy the requirements of Texas Code of Criminal Procedure Article 36.14, because the written charge failed to recite: (1) the elements of the offense of possession of a controlled substance with intent to deliver; (2) the definitions of the required mental states of intent and knowledge; (3) the definition of possession; and (4) the election of a defendant not to testify.

Article 36.14 of the Texas Code of Criminal Procedure requires, in relevant part:

[I]n each felony case and in each misdemeanor case tried to a court of record, the

-11-

judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . .

TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon 2007).

Having reviewed the court's written charge in this case, we note that the version originally filed as part of the clerk's record on appeal is missing three pages. This Court, on its own motion, directed the clerk of the trial court to supplement the clerk's record with a complete version of the trial court's written charge. *See* TEX.R.APP.P. 34.5(c)(on its own motion, appellate court may direct the trial court clerk to prepare, certify, and file a supplement containing an item omitted from the record). It is apparent based on the complete version of the written charge, as well as on the trial court's recitation of the charge prior to argument, that the jury was duly instructed as to the elements of the offense Appellant was charged with, the definitions of the applicable mental states for the offense, the applicable definition of "possession," and the effect of Appellant's election not to testify. Accordingly, Appellant has failed to demonstrate a violation of Article 36.14, and has not established he was egregiously harmed by charge error. Issue Four is overruled.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

March 31, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

-12-